William A. Gilbert, WSBA #30592
Gilbert Law Firm, P.S.
421 W. Riverside Ave, Suite 353
Spokane, WA  99201
T: 509·321·0750
F: 509·343·3315
E: bill@wagilbert.com
Attorney for Plaintiffs

The Honorable Tana Lin

UNITED STATES DISTRICT COURT OF THE WESTERN
DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CAROLINE ANGULO, a single person, ERIC KELLER, a single person, and ISABEL LINDSEY and CHARLES LINDSEY, a married couple, <br><br> Plaintiffs. <br><br> v. <br><br> PROVIDENCE HEALTH & SERVICES WASHINGTON, a non-profit Washington Corporation, also d/b/a PROVIDENCE ST. MARY MEDICAL CENTER; Dr. JASON A. DREYER, DO, and JANE DOE DREYER, husband and wife and the marital community thereof; Dr. DANIEL ELSKENS DO, and JANE DOE ELSKENS, husband and wife and the marital community thereof; and JOHN/JANE DOES 1-10, and any marital communities thereof, <br><br> Defendants. | NO.  22-CV-00915-TL <br><br> **TRIAL BY JURY REQUESTED** <br><br> **CLASS ACTION COMPLAINT (AMENDED)** |

Plaintiffs allege:

## I. INTRODUCTION

1.1 For over 100 years, Defendant PROVIDENCE HEALTH & SERVICES WASHINGTON (hereinafter "PROVIDENCE") has been a member of the medical community in the state of Washington, including Eastern Washington. Upon information and belief, PROVIDENCE has owned and operated St Mary Medical Center (SMMC), a hospital located in Walla Walla, Washington since 1880. Providence St. Joseph Health ("Providence St. Joseph Health") is a Washington non-profit corporation that shares its headquarters with PROVIDENCE.

1.2 PROVIDENCE promotes itself as providing excellent, reliable, and necessary medical care.

1.3 PROVIDENCE employed Dr. DANIEL ELSKENS DO, and Dr. JASON A. DREYER, DO, as neurosurgeons in its neurosurgery department at SMMC.

1.4 Upon information and belief, in order to increase its own profits, PROVIDENCE instituted a pattern and practice that encouraged Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS DO to conduct unsupervised spine surgeries at high-volume rates using a productivity metric with no cap on compensation that provided the neurosurgeons financial incentives to perform a high volume of surgical procedures of greater complexity.

1.5 As a result of this pattern and practice, Dr. JASON A. DREYER, DO became one of the highest producing neurosurgeons in the entire PROVIDENCE system, earning between $2.5 and $2.9 million a year for the years he was employed; at one point making him the second highest paid employee in all of Providence, with only the CEO of the Corporation earning more.

1.6 Both neurosurgeons ultimately resigned from PROVIDENCE (Dr. DANIEL ELSKENS DO on or about May 8, 2017, and Dr. JASON A. DREYER, DO on or about November

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 2 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

13, 2018). The resignations came on the heels of internal and DOH administrative investigations into allegations that the surgeons were performing medically unnecessary and otherwise improper spine surgeries, and conducting surgical procedures below the standard of care.

1.7     After the resignation of Dr. DREYER and Dr. ELSKENS, a third neurosurgeon employed by SMMC, Dr. David Yam, resigned and filed a complaint under the False Claims Act alleging Providence, DREYER, and ELSKENS were committing medical billing fraud with government funded insurance providers.

1.8     On April 12, 2022, PROVIDENCE announced a settlement with the United States Department of Justice ("DOJ") for $22.7 million, to resolve allegations that PROVIDENCE fraudulently billed Medicare, Medicaid, the Washington Health Care Authority, and other government health care programs for neurosurgery procedures by Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS DO that did not meet criteria for reimbursement, that were medically unnecessary, or that were otherwise improper.

1.9     For the first time, on April 12, 2022, PROVIDENCE admitted publicly that it was aware of concerns raised by PROVIDENCE personnel about these neurosurgeons' negligent, violative, unethical, and fraudulent treatment practices and that it had investigated those concerns, but that it nonetheless allowed both neurosurgeons to resign rather than report them to the National Practitioner Data Bank ("NPDB") or Washington State Department of Health ("WDOH") as required by law.  For example, under 42 U.S.C. § 11133(a)(1) of the Healthcare Quality Improvement Act of 1986, and the NPDB guidelines, health care entities are required to report surrenders of physician clinical privileges while they are under investigation. Under these laws, PROVIDENCE had a statutory and common law duty to disclose, including to the members of the

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 3 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

class for their benefit in making material decisions about their healthcare. These failures to disclose by Defendants were intended to, and did, prevent discovery of their claims by Plaintiffs.

1.10   Upon information and belief, PROVIDENCE was aware, or should have been aware at or near the time of hiring these neurosurgeons that they consistently put patients' health and safety at dire risk while making decisions based upon personal financial recovery rather than medical necessity; yet PROVIDENCE actively concealed that information up to and including failing to report them to the NPDB or the WSDH and allowing the neurosurgeons to depart their employ with a publicly clean record.

1.11   According to the United States Department of Justice, the victims of these medically unnecessary or otherwise improper surgeries by these neurosurgeons' number in the "hundreds."[1]

1.12   After his resignation from PROVIDENCE, Dr. JASON A. DREYER, DO was hired by MultiCare Health System in Spokane, Washington [MULTICARE], where he continued his pattern and practice of negligent, violative, unethical, and fraudulent treatment practices.

1.13   Although, upon information and belief, MULTICARE knew or should have discovered concerns related to Dr. JASON A. DREYER, DO's gross misconduct at PROVIDENCE through the extensive background investigation that is required before hiring/retaining a surgeon and providing privileges to practice in its medical facilities, it was reasonably foreseeable that PROVIDENCE's failure to report Dr. JASON A. DREYER, DO to the NPDB or WDOH would prevent or delay discovery of the faulty medical care that Dr. JASON

---

[1] Hill, *Providence to Pay $22.7 Million to Settle Medicare, Medicaid Fraud Whistleblower Complaint Brought Against two Walla Walla Neurosurgeons,* Spokes. Rev. (April 13, 2022 – updated April 14, 2022) https://www.spokesman.com/stories/2022/apr/13/providence-to-pay-227-million-to-settle-medicare-m/

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 4 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

A. DREYER, DO had provided previous patients to the financial benefit of PROVIDENCE; which would result in continued harm to future patients; and, would impact the care that his previous patients received in follow-up to Dr. JASON A. DREYER, DO's faulty and fraudulent medical care.

1.14 In response to the pattern of negligent, violative, unethical, and fraudulent treatment practices of Dr. JASON A. DREYER, DO under the direct authority of PROVIDENCE, and fraudulent concealment thereof by all DEFENDANTS, this cause of action is brought by the class of patients whose lives have been forever changed as a result of the actions or omissions of the DEFENDANTS herein named.

1.15 Filed as a Class Action, this Cause captures the broad body of patients and their families impacted by the negligent, violative, unethical, and fraudulent treatment practices of Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS, DO under the direct authority of PROVIDENCE, and fraudulent concealment thereof by all DEFENDANTS, and allows for redress of those named and unnamed members of the Class.

1.16 The Class Action allegations assert claims on behalf of the PROVIDENCE and MULTICARE patients who suffered damages due to DEFENDANTS' negligent, violative, unethical, and fraudulent treatment practices which DEFENDANTS concealed from, *inter alia*, Plaintiffs for their financial gain, in violation of the law.

1.17 Set forth herein below, named Plaintiffs designated in Section II as class representatives ("Class Plaintiffs") bring claims individually and on behalf of the Class.

1.18 For purposes of the causes of action, damages, and relief requested in this lawsuit, all Plaintiffs are referred to collectively, as they have all been the victims of the same course of conduct by DEFENDANTS detailed below.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 5 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

## II. PARTIES

2.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 1.18 as if fully set forth herein.

2.2 Plaintiff CAROLINE ANGULO, a single person, representing herself and the Settlement Class, was at all times relevant hereto residing in Walla Walla County, Washington.

2.3 Plaintiff ERIC KELLER, a single person, representing himself and the Non-Settlement Class/Providence, was at all times relevant hereto residing in Union County, Oregon.

2.4 Plaintiffs, ISABEL LINDSEY and CHARLES LINDSEY, representing themselves and the Non-Settlement Class/Multicare, were at all times relevant hereto a married couple, residing in Walla Walla County, Washington.

2.5 Plaintiffs, on behalf of themselves and those similarly situated, bring this action against DEFENDANTS for violations of

- RCW 9A.82.080 and 9A.82.100 (Criminal Profiteering)
- RCW 19.86 et seq. (Unfair Business Practices/Consumer Protection) ("CPA")
- RCW 7.70 et seq. ("Actions for Injuries Resulting from Health Care"), and
- Tort actions, including, without limitation, corporate negligence and statutory duty violations, see RCW 70.41.210, as set forth below.

2.6 At all relevant times, each Plaintiff, named and unnamed, was "a person who sustain[ed] injury to his or her person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity, or by an offense defined in" RCW 9A.82.080. See RCW 9A.82.100.

2.7 At all relevant times, each Plaintiff, named and unnamed, was a "person who was injured in his or her business or property" by a violation of the CPA. See RCW 19.86.090.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 6 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

2.8    At all relevant times, each Plaintiff, named and unnamed, was a person to whom DEFENDANTS owed a duty, either through RCW 7.70, corporate negligence, or through common law/statute, *e.g.*, RCW 70.41.210, which requires hospitals to report to the Department of Health, any restriction or termination of the practice of a health care practitioner while the practitioner is, *inter alia*, under investigation or in return for the hospital not taking action.

2.9    Defendant PROVIDENCE HEALTH & SERVICES WASHINGTON also d/b/a PROVIDENCE ST. MARY MEDICAL CENTER (hereinafter PROVIDENCE) is a Washington nonprofit corporation with its primary place of business located 1801 Lind Avenue, Southwest, Renton, WA 98057, which is geographically located in King County, Washington. PROVIDENCE has offices to conduct business, regularly conducts business, and manages medical facilities across the state of Washington.

2.10    At all relevant times hereto, Defendant JASON A. DREYER, DO was a licensed physician, and citizen of Washington residing in, and practicing medicine in Walla Walla County or Spokane County, Washington, as an employee or ostensible agent of either PROVIDENCE or at MultiCare Health System D/B/A MultiCare Deaconess Hospital / Rockwood Clinic (collectively MULTICARE). At all times relevant hereto, JASON A. DREYER, DO held himself out to be a medical care provider whose services were offered to the public for compensation.   It is unknown if JASON A. DREYER, DO is married, therefor, Plaintiffs allege that if he is married, all acts or omissions committed by JASON A. DREYER, DO were done both for, and on behalf of, the community composed of JASON A. DREYER, DO and his wife, JANE DOE DREYER.

2.11    At all relevant times hereto, Defendant DANIEL ELSKENS, DO was a licensed physician, and citizen of Washington, residing in, and practicing medicine in Walla Walla County, Washington, as an employee or ostensible agent of PROVIDENCE. At all times relevant hereto,

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 7 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

DANIEL ELSKENS, DO held himself out to be a medical care provider whose services were offered to the public for compensation. It is unknown if DANIEL ELSKENS, DO is married, therefor, Plaintiffs allege that if he is married, all acts or omissions committed by DANIEL ELSKENS, DO were done both for, and on behalf of, the community composed of DANIEL ELSKENS, DO and his wife, JANE DOE ELSKENS.

2.12    Upon information and belief, JOHN / JANE DOE employees or agents of PROVIDENCE (and any spouses/marital communities thereof) reside and/or work in the State of Washington and include but are not limited to those listed in the 2020 *qui tam* action that resulted in the 2022 settlement between PROVIDENCE and the DOJ (i.e., PROVIDENCE's Chief Medical Officer and key PROVIDENCE administrators in Walla Walla, Spokane, and Renton, WA).  See *United States ex rel. Yam v. Providence Health & Services Washington*, Case No. 4:20-cv-05004-SMJ (E.D. Wash.), Settlement Agreement dated March 2022 (unsealed April 11, 2022).

2.13    At all relevant times, DEFENDANTS concealed and otherwise avoided release of information to the Plaintiffs of their negligent and/or illicit activity with regard to the unnecessary and/or otherwise improper medical treatments of Dr. JASON A. DREYER, DO and Dr. DANIELELSKENS, DO, including DEFENDANTS' failure to report the neurosurgeons to proper authorities as legally required.

2.14    At all relevant times, the first notice that any Plaintiff, named and unnamed, received regarding DEFENDANTS' actions was April 12, 2022 – the day the DOJ announced its settlement with PROVIDENCE for restitution for false health care payments, and the agreed-upon upon facts elicited thereto.

### III.    JURISDICTION AND VENUE

3.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

incorporate by reference paragraphs 1.1 through 2.14 as if fully set forth herein.

3.2    The State of Washington has subject matter jurisdiction over this action pursuant to RCW 2.08.010 because most alleged acts occurred in this State.  In addition, upon information and belief, more than 2/3 of the members of the proposed class are citizens of Washington.

3.3    Jurisdiction and venue are proper in and for the Superior Court of Washington for King County because at all times relevant hereto, Defendant PROVIDENCE's controlling business offices were located in King County, Washington and removal to federal court is not authorized or justified under 28 U.S.C. § 1453.

## IV.    TIMELINE AND FACTS

4.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 3.3 as if fully set forth herein.

4.2    Between July 1, 2013, and November 13, 2018, PROVIDENCE employed Dr. JASON A. DREYER, DO as a neurosurgeon at SMMC in Walla Walla.

4.3    PROVIDENCE employed Dr. DANIEL ELSKENS, DO between November 2015 and May 2017 as a neurosurgeon at SMMC in Walla Walla.

4.4    Upon information and belief, PROVIDENCE encouraged Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS, DO to perform a high volume of surgical procedures of greater complexity to increase PROVIDENCE profits.

4.5    Upon information and belief, PROVIDENCE encouraged Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS, DO to conduct spine surgeries at high-volume rates by applying a productivity bonus metric that provided the surgeons financial incentive to perform a high volume of surgical procedures of greater complexity.

4.6    Upon information and belief, Dr. JASON A. DREYER, DO and Dr. DANIEL

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 9 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

ELSKENS, DO did conduct complex spine surgeries at high-volume rates with intent and purpose of collecting productivity incentive money.

4.7    DEFENDANTS' actions resulted in the performance of medical treatments that did not meet criteria for health care insurance reimbursement, that were medically unnecessary, or that were otherwise improper, for which improper submissions for payment to health insurance entities occurred, including to e.g., Medicare and Medicaid, all for DEFENDANTS' financial benefit.

4.8    Dr. DANIEL ELSKENS, DO resigned from PROVIDENCE on or about May 8, 2017.

4.9    Upon information and belief, Dr. DANIEL ELSKENS, DO's resignation was triggered, at least in part, by allegations that he was performing unnecessary surgeries in order to capitalize on the PROVIDENCE productivity bonus metric.

4.10    Dr. JASON A. DREYER, DO resigned from PROVIDENCE on or about November 13, 2018.

4.11    Upon information and belief, Dr. JASON A. DREYER, DO's resignation was triggered, at least in part, by allegations that he was performing unnecessary surgeries in order to capitalize on the PROVIDENCE productivity bonus metric.

4.12    After November 13, 2018, and until March 2021, Dr. JASON A. DREYER, DO worked for MULTICARE as an employee and/or contractor.  While at MULTICARE, Dr. JASON A. DREYER, DO continued the pattern and practice established at PROVIDENCE of conducting high-volume surgeries that did not meet criteria for health care insurance reimbursement, that were medically unnecessary, or that were otherwise improper, all for the financial benefit of Dr. JASON A. DREYER, DO and MULTICARE.

4.13    On January 10, 2020, Dr. David Yam, M.D., as Relator, and on behalf of the United

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 10 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

States and Washington State, filed a complaint (the 2020 *qui tam* complaint) in the Eastern District of Washington, alleging violations of the False Claims Act against PROVIDENCE. See *United States ex rel. Yam v. Providence Health & Services Washington*, Case No. 4:20-cv-05004. (Complaint attached as Exhibit 1).

4.14 The allegations in the 2020 *qui tam* complaint was based upon the fraudulent billing for medically unnecessary and otherwise improper care provided by PROVIDENCE via its agents / employees Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS, DO.

4.15 As statutorily required, this 2020 *qui tam* complaint was filed under seal.

4.16 By notice dated January 13, 2022, the United States Justice Department intervened in the 2020 *qui tam* complaint. This also was done under seal and not made public, per statute.

4.17 The 2020 *qui tam* complaint alleged, and PROVIDENCE later admitted salient facts showing PROVIDENCE was billing the federal and state governments for these neurosurgeons' medical services that did not meet criteria for reimbursement, were medically unnecessary, and/or were otherwise improper.

4.18 On or about March 17, 2022, PROVIDENCE entered into a Settlement Agreement (SA) with the United States Government and the State of Washington.[2] The agreement calls for PROVIDENCE to pay a total of $22,690,458 ($10,459,388 of which is specified as restitution) along with remedies and protocols to ensure, *inter alia*, patients' future safety. The SA does not require any payment from Drs. Dreyer or Elskens.

4.19 As detailed in the SA, Dr. JASON A. DREYER, DO was accused of (a) falsifying, exaggerating, and/or inaccurately diagnosing patients' true medical conditions in order to obtain

---

[2] See Settlement Agreement Attached as Exhibit 2.

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

reimbursement for surgical procedures performed by him; (b) performing certain surgical procedures that did not meet the medical necessity guidelines and requirements for reimbursement set forth by Medicare and other government health insurance programs; (c) "over-operating," i.e., performing a surgery of greater complexity and scope than was indicated and medically appropriate; (d) jeopardizing patient safety by attempting to perform an excessive number of overly complex surgeries; (e) endangering patients' safety; (f) creating an excessive level of complications, negative outcomes, and necessary additional operations as a result of their surgeries; (g) performing surgical procedures on certain candidates who were not appropriate candidates for surgery given their medical histories, conditions, and contraindications; and (h) failing to adequately and accurately document certain procedures, diagnoses, and complications. Also as detailed in the SA, Dr. DANIEL ELSKENS, DO was accused of Items (e) through (h).

4.20    As detailed in the SA, PROVIDENCE accepted payments from federal and state health care sources (e.g., Medicare, Medicaid, the FEHBP, TRICARE, and VA Community Care) while being aware of these allegations against these neurosurgeons.

4.21    These facts were stipulated by PROVIDENCE in the SA as true and accurate.

4.22    Through this pattern and practice, Dr. JASON A. DREYER, DO was one of the highest producing neurosurgeons in the entire 7-state PROVIDENCE system, earning between $2.5 and $2.9 million a year for the years where he was employed.

4.23    According to the SA, despite knowledge of these neurosurgeons' misconduct, and despite placing them each on administrative leave due to concerns listed in paragraph 4.19 above, PROVIDENCE allowed Dr. DANIEL ELSKENS, DO and Dr. JASON A. DREYER, DO to resign instead of terminating their employment.

4.24    According to the SA, despite having knowledge of these neurosurgeons'

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 12 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

misconduct, PROVIDENCE reported neither neurosurgeon to legal authorities (e.g., NPDB or WDOH). This occurred despite the legal obligation to report, see 42 U.S.C. § 11133(a)(1) and RCW 70.41.210.

4.25 According to the SA, despite having knowledge of these neurosurgeons' misconduct, PROVIDENCE took no action to refund Medicare or Medicaid for surgical procedures performed by either Dr. DANIEL ELSKENS, DO or Dr. JASON A. DREYER, DO for which PROVIDENCE had previously sought and received reimbursement.

4.26 Upon information and belief, PROVIDENCE also:

4.26.1 accepted payments from private insurance health care sources using similar or the same criteria for payment/non-payment of surgeries (including requirements that medical treatment be necessary or be otherwise proper);

4.26.2 did so while being or becoming aware of the allegations against these neurosurgeons as outlined above and in the 2020 *qui tam* complaint and the SA; and

4.26.3 took no action at any time to refund any private insurance health care source or any self-funded patients for any surgical procedures performed by either Dr. DANIEL ELSKENS, DO or Dr. JASON A. DREYER, DO for which PROVIDENCE had previously sought and received reimbursement.

4.27 Upon information and belief, PROVIDENCE was aware or should have been aware at or near the time of hiring these neurosurgeons that the neurosurgeons put patients at dire risk and performed these kinds of medically unnecessary or otherwise improper procedures, yet PROVIDENCE presumably concealed that information and any and all of its knowledge regarding this unprofessional conduct until April 12, 2022, when the Settlement Agreement was made public.

4.28 In addition to the agreed-upon Settlement Agreement statements regarding

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 13 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

DANIEL ELSKENS, DO, the 2020 *qui tam* complaint specifically alleged as follows:

4.28.1 The relator, Dr. Yam, alleged that he reviewed Dr. Elskens' work; the review revealed Dr. Elskens committed severe surgical errors, including by operating on incorrect spinal sections, resulting in post-operation complications necessitating emergency remedial surgery;

4.28.2 Dr. Yam reported the errors to Providence's chief medical officer, recommending that Dr. Elskens be terminated;

4.28.3 Providence, after rejecting the recommendation, suspended Dr. Elskens when Dr. Yam discovered Dr. Elskens botched an additional surgery, nearly paralyzing the patient nearly a year later after many more patients were adversely harmed.

4.29    In addition to the agreed-upon Settlement Agreement statements regarding JASON A. DREYER, DO, the 2020 *qui tam* complaint specifically alleged:

4.29.1 After Providence failed to take seriously his initial allegations against Dr. Elskens, Dr. Yam began reviewing the work of his fellow neurosurgeon with greater scrutiny and, as such reviewed the work of Dr. Jason Dreyer because Dr. Dreyer, who studied under Dr. Elskens, spoke highly of Dr. Elskens and recommended Dr. Elskens to join the group in Walla Walla;

4.29.2 Dr. Yam's review of Dr. Dreyer revealed that Providence (through Dr. Dreyer) was billing the federal government for medical services which neither Dr. Dreyer nor Providence performed; in addition, Dr. Dreyer was fabricating patient diagnoses and treatments to justify complex operations and to increase billing and reimbursement for both himself and Providence; Dr. Dreyer would knowingly, and routinely, falsify patient records to justify as medically necessary certain expensive surgical procedures; Providence and Dr.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 14 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

Dreyer carried out this improper practice by subjecting patients to risky procedures that were legitimized through fraudulent diagnoses;

4.29.3  In one instance, for example, Providence and Dr. Dreyer claimed a patient receiving federally funded treatment suffered from a severe deformity that required complex surgery, which Dr. Dreyer performed at great risk to the patient when, in fact, the deformity was documented not to exist in the patient;

4.29.4  Dr. Yam believed, and alleged, that Dr. Dreyer's improper practices provided a windfall to Providence at the federal government's expense which likely amounted to tens of millions of dollars and likely more;

4.29.5  When Dr. Yam initially reported his concerns to Providence in November 2017, Providence assured him action would be taken but that action was insufficient, causing Dr. Yam to allege that the response was designed to allow Providence to continue to benefit from the aforementioned windfall;

4.29.6  Dr. Dreyer continued his same pattern and practice until Dr. Yam again complained in April 2018, explicitly using the words "fraud," "malpractice," and "harm" in emails to key Providence administrators in Walla Walla, Spokane, and Renton, Washington.

4.29.7  Providence responded to Dr. Yam's renewed complaint through a flawed investigation which, Dr. Yam was told, revealed no evidence of false billing, yet Providence administrators allowed for the voluntary suspension of Dr. Dreyer

4.30  Historically, repeatedly, and currently, PROVIDENCE sets itself out to the public in its promotional material as a caring, moral, health care provider with integrity that puts patients' needs first (not its own financial gain). For example, it has made the following public statements:

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 15 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.30.1 "We strive to do what's right for people, all people, but especially the poor and vulnerable."

4.30.2 "We don't take the easiest answer, we look for the right answer."

4.30.3 "Integrity means you are always approaching things with a moral viewpoint. In our case, a moral viewpoint that is adjusted for the benefit of the many, and not the few."

4.30.4 "At Providence we see more than patients, we see the life that pulses through us all. That's why we're dedicated to a holistic approach to medicine that employs not only the most advanced treatments to improve outcomes, but also puts compassion and humanity at the heart of every interaction."

4.30.5 "We use our voice to advocate for vulnerable populations and needed reforms in health care. We are also pursuing innovative ways to transform health care by keeping people healthy, and making our services more convenient, accessible and affordable for all. In an increasingly uncertain world, we are committed to high-quality, compassionate health care for everyone, regardless of coverage or ability to pay. We help people and communities benefit from the best health care model for the future – today."

4.30.6 "As a comprehensive health care organization, we are serving more people, advancing best practices, and continuing our more than 100-year tradition of serving the poor and vulnerable. Delivering services across seven states, Providence is committed to touching millions of more lives and enhancing the health of the American West to transform care for the next generation and beyond."

4.30.7 "We set the highest standards for ourselves and our ministries. Through transformation and innovation, we strive to improve the *health* and quality of life…"

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.31    These representations were and are designed to entice the public to rely upon PROVIDENCE for medical care without reservation or concern about PROVIDENCE's care and protection of their best and highest health.

4.32    Rather than inform Plaintiffs and the public of the scheme at SMMC of, *inter alia,* medically unnecessary surgeries for financial gain (described herein), PROVIDENCE concealed the scheme and maintained secrecy, to the extent of failing to report the neurosurgeons, including those under investigation, to proper authorities, and did so to maintain at all costs its squeaky-clean public persona, thus engaging in deceptive and unfair acts in order to market its health care services to new patients.

4.33    Even today, PROVIDENCE continues to engage in deceptive and unfair acts by publicly minimizing the SMMC situation (including the $22.7 million settlement and the safety precautions it now must implement across all its facilities) by falsely calling it an "isolated incident in Walla Walla" on April 12, 2022, despite the extensive damage done to its patients, despite its fiduciary obligations to those patients, and despite the fact that senior administrators from Walla Walla, Spokane, and Renton headquarters were informed about Walla Walla as early as 2018. A true and correct copy of this April 12, 2022 Statement is attached as Exhibit 3.

4.34    Since the filing of the Class Action Complaint on May 16, 2022, PROVIDENCE continued to engage in its deceptive and unfair acts by publishing a full-page advertisement on June 5, 2022, in the Walla Walla Union Bulletin that minimizes, misleads, and/or inaccurately describes the aforementioned events and PROVIDENCE's responsibility therein, including its fiduciary duties to patients. A true and correct copy of this June 5, 2022 full-page advertisement is attached as Exhibit 4.

4.35    PROVIDENCE's profit over patient safety practice ultimately resulted in patients

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 17 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

of PROVIDENCE and MULTICARE suffering permanent, debilitating harm as a result of neurosurgeons Dr. DANIEL ELSKENS, DO and Dr. JASON A. DREYER, DO's negligent, violative, unethical, and fraudulent treatment practices; the value of which will be set forth fully at trial.

4.36 By and through their fraudulent, violative, unethical, and negligent practices, PROVIDENCE's continued profit over patient safety practice resulted in actual financial loss to the named Plaintiff's and associated class of Plaintiffs as set forth herein in dollar amounts that will be set forth fully at trial.

## V. INDIVIDUAL PLAINTIFFS / CLASS REPRESENTATIVES

5.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 4.36 as if fully set forth herein.

5.2 Facts associated with individual class representatives as set forth below are representative of medical negligence, and deceptive patterns and practices employed by DEFENDANTS, to entice patients into agreeing to medically unnecessary or otherwise improper surgical procedures and related medical care.

### CAROLINE ANGULO

5.3 Plaintiff CAROLINE ANGULO, 59 years old, was a patient of PROVIDENCE at SMMC, whose surgery was negligent, medically unnecessary or otherwise improper, and whose medical expenses should either be a part of the Settlement Agreement restitution or would have been if the DOJ and PROVIDENCE had not settled.

5.4 Ms. ANGULO's insurance at all relevant times was Medicare or Medicaid.

5.5 In or around the spring of 2016, Ms. ANGULO consulted with Dr. DANIEL ELSKENS, DO at SMMC because she was experiencing lower back pain.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 18 OF 55

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

5.6 During the consultation, Dr. ELSKENS informed Ms. ANGULO that, in his opinion, her neck looked worse than her back, and he recommended cervical surgery instead of lumbar surgery.

5.7 Based on, and in reliance of, the advice and stated opinion of Dr. ELSKENS, DO, Ms. ANGULO agreed to the cervical surgery.

5.8 Ms. ANGULO's cervical surgery took place on or about April 25, 2016. The procedure, performed by Dr. ELSKENS, DO, included cervical fusion at levels C5 through C7, and was performed using the anterior approach only. He also did a carpel tunnel surgery during the same surgery.

5.9 The surgery went poorly. Ms. ANGULO had to remain in the hospital for over a month. Her vocal cords were damaged, and she could not speak. She has never recovered from this surgery. Moreover, during her follow-up treatment, Dr. ELSKENS, DO was suddenly unavailable, leaving Ms. ANGULO without a neurosurgeon.

5.10 Upon information and belief, this was a negligent, medically unnecessary and/or otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its agent / employee DANIEL ELSKENS, DO, to perform such unnecessary or otherwise improper procedures for the purpose of financial gain, resulting in foreseeable, permanent damages to Ms. ANGULO.

5.11 In or around the fall of 2017, Ms. ANGULO's primary care provider referred her to Dr. JASON A. DREYER, DO, at SMMC because of her continuing lower back pain. During the consultation, Dr. JASON A. DREYER, DO, informed Ms. ANGULO that he saw a "big problem" with her neck that required more surgery.

5.12 Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Ms.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 19 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

ANGULO agreed to his recommendation.

5.13 On or about November 18, 2017, Dr. DREYER performed a cervical/thoracic fusion on Ms. ANGULO. This surgery was both anterior and posterior according to what the hospital provided her, the fusion ranged from either levels C3 through C7, or C3 through T2 – she was provided with medical ID cards for both.

5.14 Upon information and belief, this was a negligent, medically unnecessary and/or otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its agent / employee JASON A. DREYER, DO, to perform such medically unnecessary or otherwise improper procedures for the purpose of financial gain, resulting in foreseeable, permanent damages to Ms. ANGULO.

5.15 As a result of these unnecessary and otherwise improper surgeries, Ms. ANGULO has suffered and continues to suffer general and special permanent damages, including but not limited to: job loss (she had been a Certified Nursing Assistant for over 15 years prior to the surgeries); a designation of disability (SSDI); inability to walk; sitting, standing and laying are all difficult; nerve problems; and choking when she eats (she must stay calm in order for her food to go down). Her pain levels range from a level of 6 on a good day to a 10 on a bad day (1 being minimal pain and 10 being unbearable pain). She continues to have no relief for her pain and is permanently damaged. Botox treatments for her constant pain made her unable to breathe and required three paramedic-transported emergency trips to the hospital.

5.16 Prior to April 12, 2022, Ms. ANGULO was unaware of PROVIDENCE's admission of salient facts as outlined herein and in its settlement with the DOJ.

5.17 Upon information and belief, on a more likely than not basis, the damage done by PROVIDENCE, DANIEL ELSKENS, DO, and JASON A. DREYER, DO through their negligent,

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 20 OF 55

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

medically unnecessary, and otherwise improper procedures to Ms. ANGULO is permanent and irreversible.

### ERIC KELLER

5.18    Plaintiff ERIC KELLER, 56 years old, was a patient of PROVIDENCE at SMMC, whose surgery was negligent, medically unnecessary or otherwise improper. Mr. KELLER's insurance at all relevant times was the private insurance company of Regence Blue Shield of Oregon.

5.19    In or around the summer of 2017, Mr. KELLER consulted with PROVIDENCE via its agent / employee JASON A. DREYER, DO at SMMC because he was experiencing lower back pain.

5.20    While discussing the pain and discomfort in his lower back, JASON A. DREYER, DO and Mr. KELLER discussed a prior cervical fusion Mr. KELLER had many years ago that was successful, and was causing him no pain or difficulty.

5.21    JASON A. DREYER, DO advised Mr. KELLER that what he really needed was surgery on his neck before any lumbar surgery.

5.22    When Mr. KELLER advised Dr. DREYER "my neck isn't the problem," Dr. DREYER informed him he had more wrong with his neck then he thought he did.  Dr. Dreyer went on to tell Mr. KELLER his neck was so unstable that he risked paralysis during any proposed lumbar surgery if he did not agree to the cervical surgery first.  Dr. DREYER informed him he would be turning him during the lumbar surgery and it would put pressure on the cervical spine when he did this while under anesthesia.

5.23    Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, and fearing paralysis, Mr. KELLER agreed to the cervical surgery.

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

5.24 Mr. KELLER's cervical surgery took place in or around August 2017. Following this procedure, Mr. KELLER was not able to return to work.

5.25 Upon information and belief, this was a medically unnecessary or otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its agent / employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures for the purpose of financial gain, resulting in foreseeable, permanent damages to Mr. KELLER.

5.26 Following the cervical spine surgery, Mr. KELLER again asked Dr. DREYER to look at his lumbar region. Dr. DREYER told Mr. KELLER he needed surgery on the lumbar spine.

5.27 Thereafter, Mr. KELLER's insurance, Regence Blue Shield, would not clear coverage for the procedure proposed.

5.28 On or about January 12, 2018, Dr. DREYER told Mr. KELLER the insurance company did not want to cover the surgery. Dr. Dreyer told Mr. KELLER to come in to his office the morning of January 17, and he (Dr. DREYER) would send him to the emergency room. According to Dr. DREYER, the insurance company would have to pay for the procedure because it would be indicated as an "emergency procedure."

5.29 Mr. KELLER followed the direction of Dr. DREYER. He was admitted to SMMC through the emergency department.

5.30 On or about January 18, 2018, Dr. DREYER performed the lumbar surgery.

5.31 This surgery caused permanent and debilitating nerve damage.

5.32 Upon information and belief, PROVIDENCE via its agent / employee Dr. JASON A. DREYER, DO, conducted this unnecessary or otherwise improper surgery on an emergency

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

basis in order to avoid insurance pre-authorization and to force Regence Blue Shield (Mr. KELLER's private health insurer) to pay for the procedure without formal pre-authorization.

5.33 Upon information and belief, this was a medically unnecessary or otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its agent / employee JASON A. DREYER, DO, to perform such medically unnecessary/improper procedures for the purpose of financial gain, resulting in foreseeable, permanent damages to Mr. KELLER.

5.34 As a result of these unnecessary and otherwise improper surgeries, Mr. KELLER has suffered and continues to suffer general and special permanent damages, including but not limited to: job loss (from Boise Cascade); a designation of disability (SSD); constant pain and discomfort; constant groin sensitivity and pain; pain radiating down both legs into his feet; muscle lock-ups (making him bedridden for days); significant difficulty walking; inability to sleep, sit or stand for any period of time; fatigue; anxiety, and depression. He is on pain medication daily.

5.35 Prior to April 12, 2022, Mr. KELLER was unaware of PROVIDENCE's admission of salient facts as outlined herein and in its settlement with the DOJ.

5.36 Upon information and belief, on a more likely than not basis, the damage done by PROVIDENCE and JASON A. DREYER, DO to Mr. KELLER is permanent and irreversible.

### ISABEL LINDSEY

5.37 Plaintiff ISABEL LINDSEY, 60 years old, married to Plaintiff CHARLES LINDSEY, was a patient of JASON A. DREYER, DO at PROVIDENCE at SMMC, as well as a patient of Dr. DREYER, DO after he left PROVIDENCE and began practicing at MULTICARE in Spokane, Washington.

5.38 Ms. LINDSEY underwent four (4) surgeries – all conducted by DR. DREYER.

5.39 These surgeries, each and all, were negligent, medically unnecessary or otherwise

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 23 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

improper.

5.40    Ms. LINDSEY's government-paid medical costs were either (a) a part of the Settlement Agreement restitution or would have been if the DOJ and PROVIDENCE had not settled or (b) not part of the Settlement Agreement restitution because they were incurred through treatment at MULTICARE and the DOJ sought reimbursement of payments from PROVIDENCE only.

5.41    Ms. LINDSEY's insurance at all relevant times was Medicare or Humana.

5.42    Prior to surgical procedures performed by Dr. DREYER, Ms. LINDSEY's personal medical history included comorbidity conditions that are generally considered contraindications when contemplating spine surgery.

5.43    Between 2014 and 2020, Dr. DREYER performed four surgeries on Ms. LINDSEY – three (in 2015, 2015, and 2017) as an agent / employee of PROVIDENCE and one (in 2020) as an agent / employee of MULTICARE in Spokane, Washington. After each surgery, he prescribed Ms. LINDSEY hydrocodone and valium daily for three months.

5.44    During his treatment of Ms. LINDSEY, Dr. DREYER informed her that, if she ever had imaging, she was to bring her images to him because he had taken special classes to be able to read images, and that as a result of these advanced courses, he was more skilled than other neurosurgeons, so he would see things on the images that other neurosurgeons wouldn't know.

5.45    *As to the first surgery*: in or around the end of 2014, Ms. LINDSEY consulted with Dr. DREYER after an altercation (a slap to the face), due to neck soreness with no radiculopathy and prior to any treatments such as physical therapy, injections, or any other conservative treatments.

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

5.46 During the consultation, Dr. DREYER informed Ms. LINDSEY that surgery was necessary, and that she would be able to return to her normal routine after surgery.

5.47 Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Ms. LINDSEY agreed to the surgery.

5.48 Ms. LINDSEY's surgery, fusing levels C4-C7 using the anterior approach, took place in or around January 2015.

5.49 Upon information and belief, this was a negligent, medically unnecessary, or otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its agent / employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures for the purpose of financial gain, ultimately resulting in foreseeable, permanent damages to Ms. LINDSEY.

5.50 *As to the second surgery*: Later in 2015, Dr. DREYER informed Ms. LINDSEY that her prior fusion didn't fuse and that he had to redo the surgery.

5.51 Based on, and in reliance of, the advice and stated opinion of Dr. DREYER, Ms. LINDSEY agreed to the surgery.

5.52 This surgery took place in or around December 2015 with Dr. DREYER, DO, fusing C3 through T2, using a posterior approach.

5.53 Upon information and belief, this was a negligent, medically unnecessary, or otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its agent / employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures for the purpose of financial gain, ultimately resulting in foreseeable, permanent damages to Ms. LINDSEY.

5.54 Ms. LINDSEY has experienced pain, discomfort and disability since this surgery.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 25 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

5.55 *As to the third surgery*: In 2017, after having some lumbar pain after a motor vehicle accident, Ms. LINDSEY again consulted with Dr. DREYER, who told her she needed a level L5 through S1 fusion. Again, based on, and in reliance of, this advice and stated opinion, she agreed to the surgery.

5.56 After this surgery, Dr. DREYER informed Ms. LINDSEY that she would need her bottom four vertebrae fused at a later date, causing her to believe she would need more procedures in the future.

5.57 Upon information and belief, this third surgery was a negligent, medically unnecessary, or otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its agent / employee JASON A. DREYER, DO, to perform such unnecessary/improper procedures for the purpose of financial gain, ultimately resulting in foreseeable, permanent damages to Ms. LINDSEY.

5.58 *Ms. Lindsey's fourth surgery* was conducted by Dr. DREYER at MULTICARE.

5.59 Ms. LINDSEY was involved in a motor vehicle accident in 2018. She sought consultation from Dr. DREYER at SMMC but could not locate him there. She consulted instead with Dr. David Yam, an agent / employee of PROVIDENCE at that time, who recommended against further surgery.

5.60 In his report dated January 9, 2019, Dr. Yam opined that before Ms. LINDSEY's first surgery, her MRI had "essentially no neck pathology." He further opined that he was "uncertain as to the indication for her 2015 revision surgery as well" (i.e., the second surgery) "as again she had no significant nerve compression on these images" and that her "revision fusion was less than a year after her initial operation." He also opined that a review of her 2018 CT and MRI results showed "no nerve compression of significance remaining in her neck at this time that would

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 26 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

warrant additional surgery," calling the past surgeries "massive", and inferring unnecessary.

5.61 Despite these opinions, Dr. Yam also stated in his report that "she can and should seek evaluation with Dr. Dreyer …"

5.62 After this visit, PROVIDENCE sent Ms. LINDSEY a letter stating she could not return to the clinic.

5.63 Based on, and in reliance of, the advice and stated opinion of PROVIDENCE, via its agent / employee Dr. David Yam regarding that she "can and should seek evaluation with" Dr. JASON A. DREYER, DO, Ms. LINDSEY ultimately located Dr. JASON A. DREYER in Spokane, at MULTICARE / Deaconess Hospital.

5.64 Dr. DREYER performed a fourth surgery on Ms. LINDSEY on or about October 29, 2020. In this surgery, Dr. DREYER, as an employee / agent of MULTICARE (who had previously warranted to Ms. LINDSEY that he has "special skills" for reading images that other neurosurgeons did not possess) reconstructed his past fusion at levels C3 and C4 contending they were out of alignment.  He replaced old hardware with new hardware, and gave her the metal hardware, which she still has. In this final surgery, MULTICARE abruptly failed to refill her medication, causing her severe pain and requiring the help of her primary care physician to obtain medication of 7 hydrocodone a day and 200 milligrams of Lyrica twice a day, medication on which she remains today.

5.65 Upon information and belief, this fourth surgery was a negligent, medically unnecessary or otherwise improper procedure that was part of a pattern and practice of PROVIDENCE via its agent / employee JASON A. DREYER, DO that was then continued at MULTICARE, to perform such negligent, medically unnecessary, or otherwise improper procedures for the purpose of financial gain, resulting in foreseeable, permanent damages to Ms.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 27 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

LINDSEY.

5.66 As a result of all four of these unnecessary and otherwise improper surgeries, Ms. LINDSEY has suffered and continues to suffer general and special permanent damages, including but not limited to: Limitation of movement (she used to be athletic but now she is not – e.g., she can't wash her hair without pain, do laundry, or empty a dishwasher); constant pain; fibromyalgia; depression; lack of motivation; and memory issues.

5.67 Prior to April 12, 2022, Ms. LINDSEY was unaware of PROVIDENCE's admission of salient facts as outlined herein and in its settlement with the DOJ.

5.68 Upon information and belief, on a more likely than not basis, the damage done by PROVIDENCE and JASON A. DREYER, DO to Ms. LINDSEY is permanent and irreversible.

## VI. MAINTENANCE OF THE CLASS

6.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 5.68 as if fully set forth herein.

6.2 **Patient Class Definitions**:

6.2.1 **Settlement Class.** Settlement Plaintiffs bring this Class action pursuant to Washington CR 23(b)(3) on behalf of the Settlement Class defined as follows: *All patients whose treatments informed the basis of the settlement between PROVIDENCE and DOJ (quantified for settlement purposes as $22,690,458, with $10,459,388 designated as restitution for settlement purposes), who, by definition, suffered special and/or general damages from medical procedures that were medically unnecessary or otherwise improper for said treatments.*

6.2.2 **Non-Settlement Class/PROVIDENCE.** Plaintiffs bring this Class action pursuant to Washington CR 23(b)(3) on behalf of the Non-Settlement Class/Providence defined as follows: *All patients who suffered damages as a result of medical procedures at PROVIDENCE,*

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 28 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

*performed by Dr. JASON A. DREYER, DO and/or Dr. DANIEL ELSKENS DO that were medically unnecessary or otherwise improper but whose treatments were not included in the settlement either because DOJ offered to settle for less than full restitution or because their treatment was paid for by private health insurers such as Regence Blue Shield, or was paid privately, for treatments during the relevant time periods.*

6.2.3 **Non-Settlement Class/MULTICARE.** Plaintiffs bring this Class action pursuant to Washington CR 23(b)(3) on behalf of the Non-Settlement Class/Multicare defined as follows: *All patients who suffered damages as a result of medical procedures at MULTICARE performed by Dr. JASON A. DREYER, DO that were medically unnecessary or otherwise improper but whose treatments were not included in the restitution settlement because DOJ sought reimbursement for payments to PROVIDENCE only, for treatments during the relevant time periods.*

6.2.4 Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes and/or to add Subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow, including a subclass of vulnerable adults.

6.3 **Numerosity**: The Department of Justice has estimated that the victims of these medically unnecessary or otherwise improper surgeries conducted by these neurosurgeons number in the "hundreds." Hill, *supra*. Putative members of the class cannot be identified without the assistance of the DOJ and/or PROVIDENCE due to the fact that specifics are known only to them; further, **due to HIPAA privacy restrictions which prevent complete uninhibited disclosure of entitled Plaintiffs**; as such, the Class is so numerous that joinder of all members is impracticable.

6.4 The cost of surgeries is unknown but, upon information and belief, it can be

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 29 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

estimated on average to be over $100,000.00 per patient. *The subject loss has been at least $10,459,388,* confirming that the Class is so numerous that joinder of all members is impracticable.

6.4.1 A substantial majority of each of the foregoing patient classes is comprised of residents of the state of Washington, that is, more than two-thirds of the patients; and, their principal injuries resulted from conduct of the DEFENDANTS which conduct, and resulting injuries occurred within the state of Washington; claims are based upon state law, and at least one defendant is a citizen of Washington.

6.4.2 **Settlement Class.** In settling the 2020 *qui tam* action, the DOJ agreed to a settlement amount of $22,690,458, with $10,459,388 designated as restitution. Upon information and belief, this amount was calculated based upon governmental payments after contractual adjustments on submitted claims for settlement purposes (not the entire amount). DOJ has identified "hundreds of patients" as affected, and it is unknown the number of patients included in the restitution amount or the DOJ's analysis therein, but it is believed, upon information and belief, that the Class is so numerous that joinder of all members is impracticable. As indicate in ¶ 6.3, prospective members of the class cannot be identified without the assistance of the DOJ and/or PROVIDENCE due to the fact that specifics are known only to them; further, due to HIPAA privacy restrictions which prevent complete uninhibited disclosure of entitled Plaintiffs.

6.5 **Non-Settlement Class/PROVIDENCE.** As noted, the DOJ reported that there were "hundreds" of victims of the PROVIDENCE scheme. The Class is so numerous that joinder of all members is impracticable. As indicate in ¶ 6.3, prospective members of the class cannot be identified without the assistance of the DOJ and/or PROVIDENCE due to the fact that specifics are known only to them; further, due to HIPAA privacy restrictions which prevent complete uninhibited disclosure of entitled Plaintiffs.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 30 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

6.5.1 **Non-Settlement Class/MULTICARE.** As noted, the DOJ reported that there were "hundreds" of victims of the PROVIDENCE scheme, which spanned approximately five (5) years. Upon information and belief, after leaving PROVIDENCE, Dr. JASON A. DREYER, DO worked for MULTICARE in Spokane for over two (2) years, affecting an unknown number of patients. Upon information and belief, The Class is so numerous that joinder of all members is impracticable. Moreover, Plaintiffs cannot identify Plaintiffs in the Class without the assistance of the DOJ and/or PROVIDENCE and/or other DEFENDANTS due to the fact that specifics are known only to them and due to HIPAA restrictions, which prohibit investigation to determine what patients have viable right of claims.

6.6 **Commonality**: This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including but not limited to:

6.6.1 Whether DEFENDANTS have engaged in criminal profiteering activity via multiple predicate acts of criminal profiteering under 9A.82.010(4), for financial gain actionable under RCW 9A.82.100 (Criminal Profiteering) or RCW 9A.82.080 including but not limited to hundreds of:

6.6.1.1 false health care claims as defined in RCW 48.80.030 (RCW 9A.82.010(hh));

6.6.1.2 money laundering offenses as defined in RCW 9A.83.020 (RCW 9A.82.010(t)); &

6.6.1.3 theft by deception as defined/applied in RCW 9A.56 (RCW 9A.82.010(e));

6.6.2 Whether DEFENDANTS' profiteering activity via these multiple predicate acts demonstrates a "pattern" of profiteering activity, as required by RCW 9A.82.100 (civil RICO)

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 31 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

and as defined in RCW 9A.82.010(12), including:

6.6.2.1 Actions taken having the same/similar intent – the intent was to achieve and/or maintain financial gain, and the pattern of actions taken include, e.g.:

6.6.2.1.1   submitting hundreds of false health care claims;

6.6.2.1.2   accepting hundreds of payments for those claims;

6.6.2.1.3   concealing actions taken to obtain these funds;

6.6.2.1.4   failing to repay any of the funds received; and

6.6.2.1.5   failing to report the neurosurgeons to NPDB or WDOH as required by law (which would have resulted in disgorgement of funds received);

6.6.2.2 Actions taken have the same or similar outcome / result; here the result was to keep the funds obtained and conceal the bad acts of neurosurgeons (by, inter alia, failing to return funds or report them to NPDB or WDOH), which resulted in continued and perpetual harm to unsuspecting past and future patients;

6.6.2.3 Same or similar accomplices – here, the DEFENDANTS;

6.6.2.4 Same or similar principals – here, the DEFENDANTS;

6.6.2.5 Same or similar victims – here, unsuspecting and trusting individuals in need of specialized and honest health care treatment;

6.6.2.6 Same or similar methods of commission – here, the same pattern and practice repeated itself for the entire relevant time period(s) consistently and throughout;

6.6.2.7 Otherwise interrelated by distinguishing characteristics, including nexus to the same enterprise – here, (1) one distinguishing characteristic includes a requirement in the medical profession, when seeking insurance coverage, to verify under penalties (including

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 32 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

license revocation penalties) that the proposed medical procedures are medically necessary or are otherwise proper; and (2) The enterprises to which the "nexus" exists, see RCW 9A.82.010(8), are governmental health care payee entities like, *inter alia*, Medicare/Medicaid (which require the above-described assurances), and/or the health care insurance industry, including private insurance companies (which also require such assurances), or PROVIDENCE or Providence St. Joseph Health, or the association-in-fact of both;

6.6.3 Whether DEFENDANTS' pattern of criminal profiteering activity was discovered for purposes of the statute of limitations under RCW 9A.82.100(7) (civil RICO) no sooner than April 12, 2022 (the date the DEFENDANTS first admitted publicly a pattern existed, requiring a $22.7 million settlement);

6.6.4 Whether DEFENDANTS' failure (PROVIDENCE's failure in particular) to report the malfeasance of the neurosurgeons pursuant to RCW 70.41.210 was a violation of a statutory or common law duty to Plaintiffs resulting in general/special damages;

6.6.5 Whether the settlement between DOJ and PROVIDENCE of $22,690,458 (with $10,459,388 designated as restitution) creates a mechanism by which financial damages for medical costs can be measured for all Plaintiffs (and/or for the Settlement Class Plaintiffs), including as calculated pursuant to the Providence Corporate Integrity Agreement;

6.6.6 Whether the settlement between DOJ and PROVIDENCE for a specific settlement amount ($22,690,458) and a specific amount designated for restitution ($10,459,388) creates a mechanism by which to quantify additional damages – i.e., these are agreed-upon amounts regarding medically unnecessary and other improper procedures; they form the basis of this class action; the question becomes whether these agreed-upon medical costs can be used to quantify the remainder of damages for the classes of Plaintiffs where the entire class or classes can

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

be equitably adjudicated pursuant to the agreed-upon markers;

6.6.7 Whether PROVIDENCE owed a common law or statutory duty of care to all patients to report the actions of the neurosurgeons pursuant to RCW 70.41.210, resulting in actionable lawsuits by all Plaintiffs against PROVIDENCE for failure to comply with that statutory duty, resulting in reasonably foreseeable general/special damages;

6.6.8 Whether PROVIDENCE breached its duty to comply with the standard of care of a hospital;

6.6.9 Whether DEFENDANTS exercised the requisite degree of skill, care and learning expected of a reasonably prudent hospital/healthcare provider;

6.6.10 Whether DEFENDANTS fell below their professional standard of care;

6.6.11 Whether DEFENDANTS failed to obtain consent/informed consent that surgery would not occur in a safe environment and that it included medically unnecessary or otherwise improper procedures;

6.6.12 Whether Defendant violated the Consumer Protection Act (RCW 19.86);

6.6.13 Whether Defendant concealed evidence forming the basis of this action from its patients, from MULTICARE patients, and from the public during the relevant time period until no sooner than April, 2022;

6.6.14 Whether nonmonetary relief is required to identify Class members;

6.6.15 The nature and extent of Class-wide injury and the measure of compensation for such injury.

6.7 **Typicality:** Class Plaintiffs' claims are typical of the claims of other members of the Class and Class Plaintiffs are not subject to any atypical claims or defenses. DEFENDANTS did not take reasonable steps to ensure that medically unnecessary or otherwise improper

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 34 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

procedures did not occur. DEFENDANTS sought/received payments for medically unnecessary and other improper procedures. DEFENDANTS concealed their wrongdoing by e.g., (a) failing to reimburse the enterprise health care industry and/or Medicare/Medicaid for payments for procedures that did not meet criteria for reimbursement, were medically unnecessary, or were otherwise improper; and (b) failing to report the neurosurgeons to the NPBD or the WDOH (which would have resulted in disgorgement). DEFENDANTS failed to advise Plaintiffs of medically unnecessary surgeries and otherwise improper procedures to which they were subjected. DEFENDANTS took repeated, similar actions as outlined in the commonality section, to which PROVIDENCE has admitted. Plaintiffs received the same notice, i.e., no sooner than the public announcement of the DOJ Settlement on April 12, 2022. Plaintiffs underwent similar medically unnecessary or otherwise improper procedures due to the schemes of DEFENDANTS that went unabated due to DEFENDANTS' negligence and concealment. Plaintiffs' claims like those of the Class, arise out of the same common course of conduct by Defendant directed toward Plaintiffs and the Class and are based on the same legal and remedial theories. Classes, and/or the Settlement Class, once identified, will have an additional, direct nexus to settlement/restitution amounts.

6.8     **Adequacy:** Class-Plaintiffs will fairly and adequately represent the Class, as they are committed to prosecuting this action, have no conflicts of interest, and have retained competent counsel who are experienced civil trial lawyers with significant experience in complex litigation and trial, including tort litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class(es) and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Class.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 35 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

6.9 **Predominance:** The common issues predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

6.10 **Superiority:** Class-Plaintiffs and Class members have suffered and will continue to suffer harm and damages as a result of DEFENDANTS' actions. Absent a Class action, most Class members likely would find the cost of litigating their claims prohibitive and/or may not even become informed of their causes of action due to HIPAA confidentialities and how the details of the settlement (and which cases inform the bases of the settlement agreement) are also currently held confidentially. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, and provides a forum for all claims, which number in the "hundreds" (according to the Department of Justice). There will be no significant difficulty in the management of this case as a Class action. The identity of each Class member is readily identifiable from DEFENDANTS' own records and the records of the DOJ. Unless this matter proceeds as a Class action, many patients who were injured by these DEFENDANTS may not otherwise learn how or why they were injured.

**VII. CAUSE OF ACTION: Criminal Profiteering [RCW 9A.82.100 and 9A.82.080]**

7.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1 through 6.10 as if fully set forth herein.

7.2 Plaintiffs herein set forth their claim for damages resulting from DEFENDANTS' violations of the Washington Criminal Profiteering Act, 9A.82.100 and 9A.82.080.

7.3 Each DEFENDANT is a "person" within the meaning of RCW 9A.04.110(17).

**A. Violation of RCW 9A.82.100**

7.4 DEFENDANTS violated RCW 9A.82.100, as further alleged herein, by knowingly

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 36 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

engaging in a pattern of criminal profiteering activity as set forth in the preceding paragraphs by engaging in the following acts of criminal profiteering activity for financial gain ("predicate acts") with a nexus to the identified health care insurance enterprises:

     7.4.1    false health care claims as defined in RCW 48.80.030 (RCW 9A.82.010(hh));

     7.4.2    money laundering as defined in RCW 9A.83.020 (RCW 9A.82.010(t));

     7.4.3    theft by deception as defined/applied in RCW 9A.56 (RCW 9A.82.010(e)).

**B. Violation of RCW 9A82.080(1) & (2)**

7.5    DEFENDANTS violated RCW 9A82.080(1) & (2) , as further alleged herein, by: (1) knowingly and willfully receiving the proceeds, directly or indirectly, from a pattern of criminal profiteering activity to use or invest any part thereof in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of the enterprise PROVIDENCE or the alternative enterprise(s); and (2) knowingly and willfully acquiring or maintaining, directly or indirectly, an interest in or control of the enterprise or real property through a pattern of criminal profiteering activity. Plaintiffs have been injured in their persons, property and business as a result of the DEFENDANTS' knowing receipt of the proceeds from the pattern of criminal profiteering activity and their subsequent use and investment, and concealment of their use and investment, in the enterprise of PROVIDENCE or the alternative enterprises, including for purposes of maintaining the enterprise(s) to attract patients and submit further false health care claims.

**C. Violation of RCW 9A82.080(3)**

7.6    DEFENDANTS violated RCW 9A82.080(3), as further alleged herein, by

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 37 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

knowingly and willfully conspiring to commit the foregoing criminal profiteering acts and violations of RCW 9A.82.080(1) & (2), in violation of RCW 9A.82.080(3).

7.7 Each plaintiff is a person who sustained injury to his or her person, business, or property by an act of criminal profiteering that is a part of a pattern of criminal profiteering activity under RCW 9A82.100, or by the offenses alleged in RCW 9A82.080(1), (2) & (3).

7.8 Plaintiffs' injuries were directly and proximately caused by Defendants' violations of the aforementioned offenses.

7.9 As to each of the following predicate offenses, failure by DEFENDANTS to return funds obtained as described below is evidence of the intent to commit the predicate act(s) and are part of the pattern of criminal profiteering activity alleged herein.

**Predicate Acts**
**False Health Care Claims, RCW 48.80.030**

7.10 As set forth herein above, DEFENDANTS:

7.10.1 presented and/or caused to be presented to health care payers hundreds of claims for a health care payment knowing the claim to be false and/or that falsely represented that the goods or services were medically necessary in accordance with professionally standards; and/or

7.10.2 concealed or failed to disclose information with intent to obtain health care payments to which they were not entitled, including but not limited to false certifications of medical necessity and failure to disclose noncompliance with 42 U.S.C. § 11133(a)(1) of the Healthcare Quality Improvement Act of 1986, and the NPDB guidelines.

7.11 These acts constituted false health care claims in violation of RCW 48.80.030.

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

**Predicate Acts**
**Money Laundering, RCW 9A.83.020(1)(a) &(b)**

7.12    As set forth herein above: DEFENDANTS conducted or attempted to conduct financial transactions (to wit, receiving and depositing health care payments) involving the proceeds of specified unlawful activity (to wit, false health care claims, in violation of RCW 48.80.030, and theft by deception under RCW 9A.56.030) knowing the property was proceeds of that specified unlawful activity.  In addition, Defendants knew that the transactions with Plaintiff's health care payors (*i.e.*, Medicare) were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, and acted recklessly as to whether the property was proceeds of specified unlawful activity.

7.13    These acts constitute money laundering in violation of RCW 9A.83.020(1)(a)&(b).

**Predicate Acts**
**Theft by Deception, RCW 9A.56.030**

7.14    As set forth herein above: DEFENDANTS, with the intent to defraud patient class members, the health insurance industry and/or governmental insurance entities (e.g., Medicare/Medicaid), wrongfully obtained property (to wit, financial payments of false health care claims) by knowingly misrepresenting information about the health care provided, the medical necessity of it, and/or other improper issues, with the intent to deprive them of that property.

7.15    The property or services described herein exceed $1,500 in value.

7.16    These acts constituted theft in the first degree, in violation of RCW 9A.56.030.

**Pattern of Related Profiteering Acts**

7.17    DEFENDANTS engaged in a pattern of related criminal profiteering offenses, as described in this claim, repeatedly and continuously during the relevant time period, including violations of RCW 9A.56.030, RCW 48.80.030, and 9A.83.020(1)(a) & (b).

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 39 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

7.18    The multiple acts of profiteering activity had the same or similar intents, results, accomplices, victims, and methods of commission, and are otherwise interrelated by distinguishing characteristics, including a nexus to the same enterprises alleged herein of Providence, Providence St. Joseph Health care insurance payors, and/or governmental insurance entity, and are not isolated incidents.

7.19    The last such criminal profiteering activity occurred within five years after the prior incident of profiteering activity.

7.20    The criminal profiteering acts had similar purposes: *e.g.*, financial gain to the DEFENDANTS.

7.21    Each of the DEFENDANTS' criminal profiteering acts yielded similar results and caused similar injuries to the Plaintiffs to their person, property and/or business, including damage to their physical being and their finances (both as, *inter alia,* to medical expenses and as to lost wages).

7.22    Because of DEFENDANTS' failures to disclose and affirmative acts of concealment, the pattern of criminal profiteering activity was not discoverable until April 12, 2022 when the U.S. Attorney publicly announced its investigative findings regarding Providence, Dr. JASON A. DREYER, DO, and Dr. DANIEL ELSKENS, DO about the misconduct undertaken in combination to commit the profiteering alleged herein.

### **The Enterprise**

7.23    An enterprise "includes any individual, sole proprietorship, partnership, corporation, business trust, or other profit or nonprofit legal entity, and includes any … group of individuals associated in fact although not a legal entity, and both illicit and licit enterprises and governmental and nongovernmental entities." RCW 9A.82.010(8).

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 40 OF 55

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

7.24 Enterprises consist of ongoing organizations, formal or informal, with various associates function as a continuing unit. See *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn. 2d 820, 839, 355 P.3d 1100 (2015).

7.25 The enterprises used in, and with a nexus to, the pattern of criminal profiteering activity under RCW 9A.82.100 include health care insurance providers for the plaintiff Class(es), including government health care insurers (i.e., "governmental" entities U.S. Department of Health and Human Services (HHS); the Defense Health Agency (DHA), acting on behalf of the TRICARE Program; the Federal Health Benefits Program; the U.S. Department of Veterans Affairs (VA) which administers the VA Community Program, and the Washington Health Care Authority (HCA)) and private insurers whose payments promoted the medically unnecessary surgeries and related health care.

7.26 In the alternative, the enterprise used in, and with a nexus to, the pattern of criminal profiteering under RCW 9A.82.100 is PROVIDENCE, or Providence St. Joseph Health, or the association-in-fact of both. Both PROVIDENCE and Providence St. Joseph Health are legal corporations or legal entities, making them enterprises under RCW 9A.82.010(8). Their association-in-fact had a common purpose of engaging in the aforesaid course of conduct, through an ongoing organization, and with associates functioning as continuing unit. For example, Providence and Providence St. Joseph Health share offices and have functioned as a continuing unit for years up through the disclosures of April 2022.

7.27 Independent motives and stakes of Dr. JASON A. DREYER, DO are sufficient to form the basis of an independent conspirator.

7.28 Independent motives and stakes of JANE DOES and JOHN DOES, including in respect to concealment and failing to report, are sufficient to form the basis of an independent

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 41 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

conspirator.

Each of these aforementioned enterprises is a legal entity, that is, a partnership, corporation, business trust, or other profit or nonprofit legal entity, governmental and nongovernmental entities, or an association or group of individuals associated in fact although not a legal entity within the meaning of RCW 9A.82.010(8). Each alleged enterprise is an ongoing organization, formal or informal, with various associates functioning as a continuing unit.

### Causation / Injury and Remedies

7.29    As a direct and proximate result of DEFENDANTS' acts or omissions discussed herein, Plaintiff Class(es) and individual Plaintiffs have suffered injuries to the person, business, or property including but not limited to economic loss, pain, suffering, emotional distress, and injury to their physical being, including injuries compensable under RCW 9A.82.080 and 9A.82.100. These injuries include damages from the investment of proceeds in, or for the maintenance, establishment, or operation of the enteprise under RCW 9A.82.080.

7.30    Plaintiffs are entitled to an award of damages including but not limited to: compensation for their actual damages; treble damages; a civil penalty of $250,000; injunctive, equitable, and forfeiture relief as set forth in RCW 9A.82.100(2), (3) and (4), and (4)(f); and costs and investigative and attorneys' fees as authorized by RCW 9A.82.100(1)(a).

### VIII.    CAUSE OF ACTION: FAILURE TO REPORT (RCW 70.41.210)

8.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 7.30 as if fully set forth herein.

8.2    Pursuant to RCW 70.41.210, PROVIDENCE, through its employees and agents, including Dr. DANIEL ELSKENS DO, Dr. JASON DREYER, DO, and JOHN DOE / JANE DOE DEFENDANTS, had a mandatory duty, *inter alia*, to report within 15 days to the Washington

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 42 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

Department of Health any voluntary restriction or termination of the practice of Dr. DANIEL ELSKENS DO or Dr. JASON DREYER, DO – "including [their] voluntary resignation" – while they were under investigation or the subject of a proceeding by PROVIDENCE regarding unprofessional conduct, or in return for PROVIDENCE not conducting such an investigation or proceeding, or not taking action against said physicians.

8.3     Unprofessional conduct includes (a) incompetence, negligence or malpractice which results in injury or which creates an unreasonable risk that a patient may be harmed; (b) practice beyond the scope of practice as defined by law or rule; (c) misrepresentation or fraud in any aspect of the conduct of the business or profession; (d) the commission of any act involving moral turpitude, dishonesty or corruption relating to the medical profession; or (e ) promotion for personal gain of any unnecessary or inefficacious drug, device, treatment, procedure or service. RCW 18.130.180(1), (4), (12), (13), (16).

8.4     As set forth in the preceding paragraphs, PROVIDENCE and its employees and agents, including JOHN DOE / JANE DOE DEFENDANTS, allowed Dr. DANIEL ELSKENS DO and Dr. JASON A. DREYER, DO to resign after initiating investigations into their unprofessional conduct as defined herein and did not report them to the Department of Health as required by RCW 70.41.210.

8.5     Reporting is encouraged by public policy. RCW 70.41.210(5) provides civil immunity to a hospital, its chief administrator, or its executive officer who file a good faith report with the Department of Health.

8.6     PROVIDENCE and its agents/employees also failed to report Dr. DANIEL ELSKENS DO and Dr. JASON A. DREYER, DO to the NPDB. As a result of the failure to report, these surgeons continued to conduct unnecessary, improper, and defective procedures for profit

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 43 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

while harming multiple patients, and defrauding patients and insurance companies, including Medicare and Medicaid.

8.7 The purpose of, *inter alia*, this mandatory reporting is to "promote safe and adequate care of individuals in hospitals" and to enforce minimum standards and rules "for the safe and adequate care of patients." RCW 70.41.010, .030.

8.8 Plaintiffs, who are/were individuals receiving care at PROVIDENCE SMMC and at MULTICARE / DEACONESS, were within the class of individuals for whose special benefit this mandatory reporting statute was enacted – e.g., for their safe and adequate care.

8.9 Given the above and the allegations contained herein, PROVIDENCE owed an implied statutory duty of care to each Plaintiff in the Class(es) to report Dr. DANIEL ELSKENS DO and Dr. JASON A. DREYER, DO.

8.10 DEFENDANTS breached this implied statutory duty when they failed to report Dr. DANIEL ELSKENS DO or Dr. JASON A. DREYER, DO to the Washington Department of Health and the NPDB.

8.11 As a direct and proximate result of DEFENDANTS' breach of the duties owed, Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS DO continued to conduct medically unnecessary or otherwise improper procedures for profit while harming patients and defrauding patients and insurance companies, including Medicare and Medicaid; and each Plaintiff was permanently injured, suffered, and continues to suffer physical disability and pain, medical expenses, and other damages to be fully determined at trial.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 44 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

8.12    It was reasonably foreseeable that DEFENDANTS' breach of the duties owed would result in the damages described herein.

## IX.    CAUSE OF ACTION: CONSUMER PROTECTION ACT (RCW 19.86)

9.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 8.12 as if fully set forth herein.

9.2    As set forth herein above, DEFENDANTS used false or deceiving marketing practices and otherwise engaged in unfair or deceptive acts or practices to entice Plaintiffs to engage in their services. This constitutes an unfair or deceptive act or practice under RCW 19.86.

9.3    These acts or omissions of DEFENDANTS occurred in furtherance of trade or commerce.

9.4    The unfair or deceptive act or practice of DEFENDANTS as set forth herein above constitute fraud which affects the public interest and violates the Washington Consumer Protection Act.

9.5    As a direct and proximate result of DEFENDANTS' violations of the Act, as set forth herein above, Plaintiffs suffered damages.

9.6    DEFENDANTS are now liable for those damages in an amount fully set forth at trial, but include damages to property and business, the trebling of same, and reasonable attorney fees and costs.

## X.    CAUSE OF ACTION: MEDICAL NEGLIGENCE (RCW 7.70) vs. PROVIDENCE, Dr. JASON A. DREYER, DO AND Dr. DANIEL ELSKENS, DO (Providence Plaintiffs, Named and Putative)

10.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 9.6 as if fully set forth herein.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 45 OF 55

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

10.2    As health care providers, PROVIDENCE, Dr. JASON A. DREYER, DO, and DR. DANIEL ELSKENS, DO owed Plaintiffs a duty to comply with the standard of care.

10.3    Defendant PROVIDENCE, through its employees and agents, including Dr. JASON A. DREYER, DO and DR. DANIEL ELSKENS, DO, failed to exercise the degree of care, skill, and learning expected of reasonably prudent health care providers in the same profession or class in the State of Washington acting in the same or similar circumstances. Such conduct proximately caused severe injuries and damages to plaintiffs. Defendant's conduct violated RCW 4.24, 13 RCW 7.70, and other applicable law.

10.4    The statute of limitations in respect to the medical negligence claims will be tolled on certain patients as a result of the Continuing Course of Treatment Doctrine; and Discovery Rule.

**XI.    CONSENT/INFORMED CONSENT (Providence Patients, Named and Putative)**

11.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 10.4 as if fully set forth herein.

11.2    As set forth herein above, despite fraudulent reporting otherwise, DEFENDANTS breached their duty to inform plaintiffs of all material facts, including risks and alternatives, which a reasonably prudent patient would need to make an informed decision on whether to consent to or reject proposed courses of treatment, including but not limited to the risk of medically unnecessary procedures for which the motive was financial gain and not proper medical treatment. This failure proximately caused injury to plaintiffs.

**XII.    CORPORATE NEGLIGENCE (Providence Plaintiffs, Named and Putative)**

12.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 11.2 as if fully set forth herein.

12.2    A medical facility, in this case, PROVIDENCE, has the following duties: (1) a duty

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 46 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians and staff; (3) a duty to oversee all persons who treat patients within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

12.3    PROVIDENCE breached the afore listed duties by, without limitation:

12.3.1  failing to select, retain, and supervise competent staff;

12.3.2  failing to ensure of proper oversight of staff;

12.3.3  failing to assure proper diagnosis and care;

12.3.4  failing to formulate, adopt and enforce adequate rules, policies and/or adopting policing or practices which in themselves created an unnecessary and unreasonable risk to Plaintiff(s);

12.3.5  failing to conduct an adequate credentialing background investigation pursuant to best practice guidelines before hiring Dr. JASON DREYER and Dr. DANIEL ELSKENS, and giving them privileges to see patients and perform surgeries at PROVIDENCE facilities.

12.4    PROVIDENCE's breach of corporate duties as set forth above directly and proximately led to injuries and damages to the Plaintiffs.

12.5    PROVIDENCE is now liable for the injuries and harm suffered by Plaintiffs as a result of its Corporate Negligence

12.6    PROVIDENCE is liable for the injuries and harm suffered by Plaintiffs as a result of its Corporate Negligence.

## XIII.    DISCOVERY RULE

13.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 47 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

incorporate by reference paragraphs 1.1 through 12.6 as if fully set forth herein.

13.2 The Discovery Rule regarding statute of limitations applies to individual plaintiffs. See *Pickett v. Holland Am. Line-Westo*urs, 145 Wn. 2d 178, 188, 35 P.3d (2001). For the claims under the criminal profiteering statute, discovery of the pattern of criminal profiteering activity could not reasonably have occurred until the public revelation of the settlement agreement in April 2022. For all claims, discovery was prevented due to intentional concealment and/or fraud and/or the continuing care doctrine until the public revelation of the settlement agreement in April 2022.

13.3 Here, through their acts and omissions, DEFENDANTS deprived Plaintiffs of the opportunity to discover the factual bases for these causes of action until April 12, 2022.

## XIV. BREACH OF FIDUCIARY DUTY / FRAUD / MISREPRESENTATION (Against Defendants By Patients, Named and Putative)

14.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 13.3 as if fully set forth herein.

14.2 DEFENDANTS owed a fiduciary duty through the relationship with their patients based upon their position of trust, confidence, greater expertise, duty of candor, and dependence. Specifically, DEFENDANTS had a fiduciary relationship to the patient class members that gave rise to a duty of care to them requiring DEFENDANTS to exercise the utmost good faith in dealing with class members, including to fulfill their duty of loyalty to their patients.

14.3 As set forth herein above, DEFENDANTS engaged in acts or omissions breaching these fiduciary duties, which directly and proximately caused damages to Plaintiffs. The patients relied upon DEFENDANTS' fiduciary duties in following their advice on the need for medical treatment.

14.4 DEFENDANTS have statutory and common law duties to inform patients of risks of medical care, and all information needed for patients to make informed healthcare decisions.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 48 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

14.5    DEFENDANTS were required to inform patients about the substantially increased risk of treatment by Dr. JASON A. DREYER, DO and Dr. DANIEL ELSKENS DO due to their history of performing medically unnecessary and otherwise improper procedures.

14.6    Without this information, Plaintiffs were deprived of material facts to inform their treatment decisions.

14.7    DEFENDANTS knew that in withholding material facts, they were affirmatively misrepresenting information to Plaintiffs.

14.8    DEFENDANTS intended for Plaintiffs to rely on DEFENDANTS, and DEFENDANTS' concealments, to make informed healthcare decisions.

14.9    Upon information and belief, DEFENDANTS were further engaging in false or misleading reporting in medical reports in an effort to conceal evidence of negligent, violative, unethical, and fraudulent treatment practices.

14.10    Plaintiffs did not know DEFENDANTS were concealing material facts and had the right to and did reasonably rely on DEFENDANTS to meet its statutory and common law duty to inform them of material facts. DEFENDANTS' failure to inform Plaintiffs, in the face of a legal duty to do so, constitutes fraud by concealment, as specifically identified herein.

14.11    Plaintiffs suffered damages as a result of a reasonable reliance on DEFENDANTS' fraud and misrepresentation.

## XV.    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS and OUTRAGE

15.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 14.11 as if fully set forth herein.

15.2    DEFENDANTS owed Plaintiffs a common law duty not to engage in conduct that would cause the Plaintiffs severe emotional distress.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 49 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

15.3 By misleading Plaintiffs, concealing evidence of negligent, violative, unethical, and fraudulent treatment practices, performing unnecessary and ill-advised medical procedures, and operating below the standard of care, DEFENDANTS negligently inflicted emotional distress upon Plaintiffs.

15.4 Additionally, DEFENDANTS' conduct as set forth herein constituted extreme and outrageous conduct that would shock the conscious of an ordinary, reasonable person; which outrageous conduct resulted in Plaintiffs' suffering severe emotional distress.

## XVI. LOSS OF CONSORTIUM

16.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 15.4 as if fully set forth herein.

16.2 As a direct and proximate result of DEFENDANTS' negligent and intentional acts or omissions as set forth herein, Plaintiffs' statutorily qualified family members suffered loss of consortium, and special damages if available.

## XVII. VICARIOUS LIABILITY

17.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 16.2 as if fully set forth herein.

17.2 Upon information and belief, employees and agents of the defendants, implicated in this cause of action were at all times relevant to this cause of action acting within their official capacity and scope of employment with and for PROVIDENCE.

17.3 Upon information and belief, physicians, employees, or agents alleged to have been negligent in the treatment/care of Plaintiff(s) in this case were either employees, agents in fact, or

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

alternatively, ostensible agents.[3]

17.4    PROVIDENCE is liable for injuries/damage suffered by Plaintiff(s) as a result of the intentional and negligent acts or omissions of their employees, owners, managers, agents, or ostensible agents under the theory of *Respondeat Superior*.

## XVIII.  NEGLIGENCE PER SE

18.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 17.4 as if fully set forth herein.

18.2    Certain of the acts of the DEFENDANTS set forth herein amount to regulatory and statutory violations. The violation of regulations and statutes constitutes negligence per se.[4]

## XIX.    RES IPSA LOQUITUR

19.1    Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 18.2 as if fully set forth herein.

19.2    DEFENDANTS had exclusive control over the actions and omissions which constituted the sum total of the care provided to Plaintiffs during their pre-surgical, surgical, and post-surgical care.

19.3    DEFENDANTS had exclusive control over the actions and omissions which ultimately resulted in the defrauding of Plaintiffs and their medical insurance providers, including Medicare and Medicaid.

---

[3] *Adamski v. Tacoma General Hospital*, 20 Wn. App. 98, 112, 579 P.2d 970 (1978) (hospitals are liable for the doctors who work at them).

[4]  Restatement (Third) of Torts §14 states in relevant part that an actor is negligent per se if that actor violates a statute that is designed to protect against the type of accident or harm caused by the actor's conduct, and the plaintiff is someone the statute is designed to protect.

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 51 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

19.4 DEFENDANTS acted intentionally to conceal the fraud in respect to regulatory reporting, billing, and patient medical records as set forth herein above.

19.5 As a result of this concealment and fraud, Plaintiffs had no ability to take action on their own behalf to avert the injuries and damages cause by the DEFENDANTS negligent and intentional acts or omissions which caused Plaintiffs to suffer injuries and damages.

19.6 The injuries and damages sustained by the Plaintiffs here do not occur in the absence of negligence or intentional actions in variance with statute and regulatory authority undertaken by the medical care team.

19.7 DEFENDANTS are now liable for the damages Plaintiff has suffered as a result of their negligence pursuant to the doctrine of *Res Ipsa Loquitur*.

## XX. UNJUST ENRICHMENT (Providence Plaintiffs, Named and Putative)

20.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 19.7 as if fully set forth herein.

20.2 With each and every payment received as described herein, each DEFENDANT received a benefit at a Plaintiff's expense, and the circumstances make it unjust for the DEFENDANT to retain the benefit without payment.

20.3 DEFENDANTS are liable for the damages to Plaintiff for unjust enrichment, including restitution and disgorgement.

## XXI. WAIVER OF PRIVILEGE

21.1 Plaintiffs, on behalf of themselves and those similarly situated, reallege and incorporate by reference paragraphs 1.1 through 20.3 as if fully set forth herein.

21.2 Waiver of the physician-patient privilege under RCW 5.60.060(4)(b) does not waive or release any other rights or privileges, including those related to the physician-patient

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 52 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

relationship, other than the privilege set out in the above-cited statute.

### XXII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS in their favor and in favor of the Class as follows:

22.1    Finding that this action is properly maintainable as a Class action pursuant to CR 23(b)(3), and certifying each Class.

22.2    Finding the Plaintiffs are prevailing parties against each DEFENDANT, jointly and severally, for violations of RCW 9A.82.100 and RCW 9A.82.080 (Criminal Profiteering) and award Plaintiffs compensation equal to their actual damages, a tripling of those damages, a civil penalty of $250,000, injunctive and remedial relief as set forth in RCW 9A.82.100(2), (3), and (4), and forfeiture under RCW 9A.82.100(4)(f).

22.3    Awarding Plaintiffs reasonable investigative and attorneys' fees and costs under RCW 9A.82.100(1)(a).

22.4    Finding the Plaintiffs are prevailing parties against each DEFENDANT, jointly and severally, for violations of RCW 19.86 (Consumer Protection Act) and award Plaintiffs damages as allowed under the Act, including a tripling of damages and reasonable attorney fees and costs.

22.5    Finding Plaintiffs to be the prevailing parties against each DEFENDANT for violations of the implied statutory duty to report Dr. DANIEL ELSKENS DO and Dr. JASON A. DREYER, DO, which resulted in general and special damages to be determined at trial.

22.6    Finding DEFENDANTS were otherwise negligent in their acts as outlined above.

22.7    Finding DEFENDANTS' negligence resulted in injury to each Plaintiff.

22.8    Ordering DEFENDANTS to identify all Class Plaintiffs pursuant to their records.

22.9    For compensatory damages suffered by Plaintiffs and Class resulting from any and

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 53 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

all claims pled herein, in amounts to be proven at trial.

22.10 For unjust enrichment, Plaintiffs seek restitution and disgorgement.

22.11 For costs and disbursements.

22.12 For statutory attorney fees.

22.13 For private forfeiture relief, see RCW 9A.82.100(4)(f).

22.14 For a forfeiture money judgment in the amount of no less than $22,690,458.

22.15 For disgorgement of monies obtained in breach of fiduciary duty or through unjust enrichment.

22.16 If Defendant brings any frivolous or unfounded defenses, for attorneys' fees and costs pursuant to RCW 4.84.185 and/or Rule 11 of the Superior Court Civil Rules.

22.17 For statutory interest on the judgment from the date judgment is entered until paid in full.

22.18 For prejudgment interest on the special damages.

22.19 For prejudgment interest on liquidated damages.

22.20 All damages allowed under RCW 4.20.010, RCW 4.20.20, RCW 4.20.046, RCW 4.20.060, and RCW 4.24.010, as applicable.

22.21 For entry of equitable nonmonetary remedies and a permanent injunction, including but not limited to as authorized in RCW 9A.82.100(2), (3), (4) and (4)(f):

22.21.1 enjoining DEFENDANTS from utilizing any form of productivity bonus metric that encourages surgeons to engage in high volume patient care, or increased complex surgical procedures.

22.21.2 requiring DEFENDANTS to provide open public access to peer review materials and credentialling files for all surgeons.

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315

22.21.3 requiring DEFENDANTS to disclose the names and contact information for putative members of all Classes and/or to assist Plaintiffs' counsel in identifying and notifying class members of their rights under this action;

22.21.4 divesting DEFENDANTS of the proceeds of their profiteering activity.

22.22 For such other and further relief as the Court may deem just and equitable.

22.23 The Plaintiffs reserve the right to elect remedies if there is a determination of a conflict between claims or remedies.

## XXIII.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that all causes of action pled herein be tried to a 12-person jury with sufficient alternates to assure complete justice without interference or delay.

DATED THIS 28th day of July, 2022.

GILBERT LAW FIRM, P.S.

_____
William A. Gilbert, WSBA #30592
Attorneys for Plaintiffs

NO. 22-CV-00915-TL
PLAINTIFFS' CLASS ACTION COMPLAINT
(AMENDED)
PAGE 55 OF 55

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
(509) 321-0750 • FAX (509) 343-3315