**Bright, Pam (DOH)**

| | |
|---|---|
| From: | Online Complaint Submission <hsqacomplaintintake@doh.wa.gov> |
| Sent: | Monday, March 4, 2019 8:28 PM |
| To: | DOH HSQA Complaint Intake |
| Subject: | Survey Response: HSQA Healthcare Provider & Facility Complaint Form |

The following survey response is submitted:

**1. Please select the statement that best applies to you.**

1. I am filing a complaint on a healthcare provider or healthcare facility.

**2. Healthcare Provider Information – Please complete this section if you are filing a complaint against an individual healthcare provider. Please note we do not have authority to process complaints against a provider's administrative staff (receptionist, customer service and office managers).**

What type of healthcare provider are you reporting? If the profession type is not listed, please contact us at 360-236-2620 or by email.

Osteopathic Physician and Surgeon

What is the name and address of the individual healthcare provider(s) you are filing a complaint about (if applicable)? If you have more than three, please submit an additional complaint.

| | |
|---|---|
| First Name | Jason |
| Middle Name (optional) | (no answer) |
| Last Name | Dreyer |
| Address | 301 W. Poplar Street |
| City | Walla Walla |
| State | WA |
| Zip Code | 99362 |
| Provider's credential number(optional) | OP60323732 Lookup a provider's credential number |
| First Name | (no answer) |
| Middle Name (optional) | (no answer) |
| Last Name | (no answer) |
| Address | (no answer) |
| City | (no answer) |
| State | (no answer) |
| Zip Code | (no answer) |
| Provider's credential number(optional) | (no answer) Lookup a provider's credential number |
| First Name | (no answer) |
| Middle Name (optional) | (no answer) |
| Last Name | (no answer) |
| Address | (no answer) |
| City | (no answer) |

RECEIVED
MAR 05 2019
Office of Investigative and Legal Services Complaint Intake

1

EXHIBIT 5 PG 001  000001

Exhibit A  Page 001                    DREYER, OST

| | |
|---|---|
| State | (no answer) |
| Zip Code | (no answer) |
| Provider's credential number(optional) | (no answer) Lookup a provider's credential number |

3. **Healthcare Facility Information** - Please complete this section if you are filing a complaint against a healthcare facility. Please note we do not have authority to process complaints against a facility's administrative staff (receptionist, customer service and office managers).

If this is a doctor's office, provider's office, clinic, adult family home, assisted living facility, boarding home, nursing home, or skilled nursing facility, we may be able process a complaint against individual providers working there. To do so, please complete the previous question of this form about the healthcare provider.

However, if you wish to file a complaint against an assisted living facility, boarding home, adult family home, nursing home, or skilled nursing facility, and not against an individual provider working at one of these facilities, please contact the Department of Social and Health Services at 800-562-6078.

If this is a complaint on a hotel or motel, please contact the Housing Program at 360-236-3393 or by email.

Please select the healthcare facility type you would like to file a complaint against. If the facility you want to file a complaint against is not listed, please contact us at 360-236-2620 or by email. You may need to contact another agency or file a complaint on an individual.

(no answer)

| | |
|---|---|
| What is the name of the facility you are filing a complaint about? | (no answer) |
| Facility Physical Address (not a mailing address): | (no answer) |
| City | (no answer) |
| State | (no answer) |
| Zip Code | (no answer) |
| What is your employment status with this facility? Please select below. | (no answer) |
| At the facility, in what department, unit, room number or floor did the incidents(s) or problem(s) occur? What was the admission date and discharge date? | |
| Department | (no answer) |
| Unit | (no answer) |
| Room Number | (no answer) |
| Floor | (no answer) |
| Date of Admission | (no answer) |
| Date of Discharge | (no answer) |
| Is the patient still in the facility or still receiving services? | (no answer) |

4. **Unlicensed Provider or Facility** - Please complete this section if you are filing a complaint against an unlicensed healthcare provider or an unlicensed healthcare facility. We can process unlicensed facility complaints only against these types of facilities we regulate. If this is a complaint on an unlicensed hotel or motel, please contact the Housing Program at housingcomplaint@doh.wa.gov. If we determine the individual or facility holds a credential, we will not process your unlicensed complaint. If you provide your contact information, we will attempt to notify you of the individual or facilities license status.

What is the name and address of the unlicensed healthcare provider or facility you are filing a complaint about (if applicable)?

| | |
|---|---|
| Provider First Name | (no answer) |
| Provider Middle Name (optional) | (no answer) |
| Provider Last Name | (no answer) |
| Facility Name (if this is an unlicensed facility complaint) | (no answer) |
| Address | (no answer) |
| City | (no answer) |
| State | (no answer) |
| Zip Code | (no answer) |

What type of profession are you alleging is being practiced without a credential?

(no answer)

What type of facility are you alleging is operating without a credential? If the facility type is not listed contact us at 360-236-2620 or by email. We only regulate the facilities types listed below and you may have to contact another agency if the facility type is not listed.

(no answer)

5. Self-Report - I am a healthcare provider or healthcare facility self-reporting an incident, below is my contact information. Note: this report will be processed against your credential. If you are completing a mandatory report on another provider or facility credential, you may need to go back and select that you want to file a complaint on a provider or facility. The Department of Social and Health Services (DSHS) process reports against Adult Family Homes, Assisted Living Facilities, Boarding Homes or Skilled Nursing / Nursing Homes. Contact DSHS at 1-800-562-6078 or online.

Are you filing this complaint on behalf of a business or facility? If so, please provide the name of the business or facility.

(no answer)

| | |
|---|---|
| First Name | (no answer) |
| Middle Name (optional) | (no answer) |
| Last Name | (no answer) |
| Facility Name - if you are self-reporting on behalf of a facility | (no answer) |
| Address | (no answer) |
| City | (no answer) |
| State | (no answer) |
| Zip Code | (no answer) |

Your credential number(optional) : (no answer) Lookup your provider number

Phone (no answer) Type(no answer)

6. Under public records laws, we cannot withhold the names of people who complain unless they qualify for "whistleblower exemption."

RCW 43.70.075 and WAC 246-15-010 determine your whistleblower status which is not necessarily based on your request to be considered a whistleblower. Please review the FAQs

about filing an anonymous complaint and who may qualify for whistleblower exemption. For additional information about whistleblower exemption, you may need to consult your attorney; the department cannot provide legal advice to you.

If you provide your name, your complaint will not be considered anonymous, even if you request anonymity. If we receive a complaint that only partially identifies you, you will be treated as an unknown complainant. Anonymous and unknown complainants may not receive any follow-up from the department.

By selecting that you want to file an anonymous complaint, you acknowledge and understand that the Department of Health will not be able to provide you with any updates about the status of your complaint. Any inquiries we receive about the status of an anonymous complaint will be treated as a public disclosure request and sent to the Public Disclosure Unit. Additionally, if an investigation is authorized and we are not able to fully identify and contact you, we may not be able to complete the investigation.

1. I do not want to file an anonymous complaint

7. Your Information - Please provide your contact information. If you are filing this complaint on behalf of a business or facility, please indicate that in this section. Please provide a way for us to contact you, a mailing address is preferred. You may not receive follow up from the department if you do not provide a contact method.

What is your name, mailing address, telephone number, and email address?

**First Name**

[redacted] 25

**Middle Name**

[redacted] 25

**Last Name**

[redacted] 25

Please provide us with a way to contact you. Please provide one or all of the following types of contact information. Mailing addresses are helpful so we can send follow up correspondence to you.

Mailing Address - including city, state and zip code

[redacted]

Phone number and/or email address

[redacted]

Are you filing this complaint on behalf of a business or facility? If so, please provide the name of the business or facility.

**No**

Are you the patient, client, resident or guest ? If yes, please enter your date of birth.

1. No

8. Patient, Client, Resident or Guest Information- Please complete this section if you are not the patient.

What is the name and date of birth of the affected patient or client?

4

EXHIBIT 5 PG 004
Exhibit A Page 004
000004
DREYER, OST
Inv 00026

**First Name**

(no answer)

**Middle Name**

(no answer)

**Last Name**

(no answer)

**Date of Birth**

(no answer)

What is your relationship to the patient or client? Please select below.

(no answer)

If other, please specify.

(no answer)

D. **Complaint Information** - Please complete all questions in this section to the best of your ability. Please provide as much detail as possible for the <u>disciplining authority</u> to review.

What are the dates(s) and time(s) that the incident(s) or problem(s) occurred?

<u>Multiple incidents over past several years</u>

Have you reported this to, or filed a complaint or action with any other agency or organization? Examples include law enforcement, Adult Protective Services, or professional licensing boards? If so, which agencies, when and what were the actions or findings?

<u>Not yet.</u>

<u>Specific details to include about an individual healthcare provider.</u>

<u>Specific details to include about a healthcare facility.</u>

If you have additional documents you would like to submit, please contact the Complaint Intake Unit at 360-236-2620 or by <u>email</u> so we can match your document(s) to your complaint form.

I have a 118 page Word document that will be emailed detailing the complaint.

**Bright, Pam (DOH)**

| | |
|---|---|
| From: | 25 ▓▓▓▓▓▓▓▓ |
| Sent: | Monday, March 4, 2019 8:30 PM |
| To: | DOH HSQA Complaint Intake |
| Subject: | Match documents to complaint submitted by online complaint form |
| Attachments: | DrDreyerMQAC.docx |

==I filed an online complaint and the attached Word document is the supporting information.==

Sincerely,

==25 Whistleblower== MD
==Neurosurgeon==
▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓ cell

**RECEIVED**

MAR 0 5 2019

Office of Investigative
and Legal Services
Complaint Intake

1

EXHIBIT 5 PG 006
Exhibit A Page 006

000006

DREYER, OST
Inv 00028



25 Whistleblower MD

cell

**RECEIVED**

MAR 0 5 2019

Office of Investigative
and Legal Services
Complaint Intake

March 4, 2019

To whom it may concern:

Re: Dr. Dreyer, Walla Walla St. Mary's neurosurgical cases

I have been a neurosurgeon at Kadlec Regional Medical Center in Richland, Washington for the past 14 years. I am writing this document to summarize a number of patient care concerns that have come to my attention regarding the neurosurgery group at Providence St. Mary's in Walla Walla and Dr. Jason Dreyer in particular. These issues have become evident to me primarily from patients seeking a second opinion following spinal surgical procedures that were done at St. Mary's, as well as patients being transferred to Kadlec Regional Medical Center from St. Mary's. After it became clear to me that this was not an isolated occurrence, I began to keep a record of the patients I encountered from St. Mary's and this is my summary and review of the most troubling cases. The majority of these cases involve Dr. Jason Dreyer, DO and I have limited this document to 11 of the most egregious cases.

EXHIBIT 5 PG 007    000007

Exhibit A  Page 007            DREYER. OST

**SUMMARY:**

In reviewing these 11 cases, several themes become obvious and should to you as well.

The first is that, repeatedly, imaging studies are reported as showing dynamic instability when in fact they do not. Why would someone do this? The reason, of course, is to secure insurance approval and justification for fusion surgery and to generate large numbers of RVUs. I would suspect that a review of all of the fusion cases done at St. Mary's in the past 5 years would show many more similar cases than just those that happened to come across my desk. I would also suspect that there were a very high percentage of instrumented fusion cases among those neurosurgical cases being done there. This embellishment of the radiographic findings to indicate instability is easy to prove with independent film review, but also simply looking at the radiology reports. I must say, however, that it is not uncommon for me to see instability on flexion/extension x-rays that is not reported by the radiologists, but in these cases I believe no such instability of significance exists.

The second theme that comes to my attention is the general overstatement of what was actually carried out in the procedure. For example, nearly every operative record for the minimally invasive fusions lists laminectomies of all of the levels. These are often described in the reports as bilateral tubular decompressions of both the ipsilateral and contralateral sides above and beyond what is typically done by the facetectomy for the interbody cage placement. This is much more difficult to prove as we were not present at these cases, however, there were multiple cases where I did not see significant laminectomy decompression on the postop CTs or MRIs. Whether or not these additional laminectomies are billed and paid for I could not say. But, they most likely do get added into the RVU total for the case which would increase the compensation for a surgeon who is paid on RVU production as I know the Walla Walla surgeons are. Speaking from experience, if this bilateral tubular decompression were actually done at multiple levels of stenosis, this would add significant time to the procedure. I am not under the impression that these cases typically lasted very long. From what I have gathered, the goal would seem to be to do as many fusion cases as possible in the shortest amount of time possible. This could be determined from the operative times reported from these cases. The other part of the procedure which often seems overstated is the posterolateral fusion. Again, my review of the postoperative CTs in the these cases shows very little, if any, bone packed in the facets or posterolateral gutters as is described in these operative notes where tube decortication and packing of bone is supposedly done of each facet. I suspect this is more about billing than actual surgical time to do an adequate posterolateral fusion.

A third feature that stands out to me in reading all of the clinic notes, H&Ps, and operative notes from Dr. Dreyer, is that they are all very similar. This templated, nearly identical format and wording to the

notes raises serious questions in my mind as to what was actually found on exam, reviewed or performed.

As I now finish writing this, it is my understanding that Dr. Dreyer has left Providence St. Mary's. The other neurosurgeon there, Dr. David Yam, has apparently given his resignation last week as well and is moving on to OHSU. It has been common knowledge for some time that Dr. Dreyer was on leave (we were told family leave) with no return date, but I understand he is not coming back. We have not been informed as to the reason why despite efforts to find out at the system level what happened. For what it's worth, one of his former patients who is now being seen at Kadlec told me he left to go to Hollywood to make movies. I hope that is actually the case as I don't believe Dr. Dreyer should be allowed to continue as a neurosurgeon. I have recently checked to see if his license was still active in Washington and it was at last look. One of the main reasons I am still reporting this information even though he has apparently left town is that I don't want this can just kicked down the road as is often done by hospitals who fear litigation by the provider. I am not certain whether or not any of these concerns have been raised by others or not, but I suggest a full investigation of all of his cases is warranted. If these issues are already being brought to your attention, then I can be a corroborating voice.

It has taken some time for me to get to the point of reporting these formally. I have confidentially brought my concerns up with several administrators in the system in the hopes that something might change and perhaps this is what led up to these neurosurgeons departing, I don't know. I am fairly certain with Dr. Dreyer that these cases are a "tip of the iceberg" problem and there are likely hundreds of similar cases. There were other cases that I encountered early on that I felt were done for poor indications, but I did not start collecting them until the trends became obvious. I would like to believe that I am a fairly conservative spine surgeon compared to many so I also let some go without saving a record on the basis of what might be considered a reasonable spectrum of surgical indications. Any spine surgeon will be humbled over the course of a career and I certainly would hate to be judged by my worst decisions or outcomes, but these cases go beyond simply being surgically aggressive or mere coincidences. Many of these cases represent fraud, deception, and a blatant disregard for the truth. The patients are the ones to suffer as a result. Is it any wonder that insurance companies are making it more and more difficult to get imaging or spine surgeries approved?

The motivating factor here in these cases, in my opinion, is pure and simple greed. The contracts of the neurosurgeons in Walla Walla are well known to be RVU based incentive contracts with high reimbursement per RVU (>80). I have been a salaried employee since 2008 with no production incentives for RVUs so I would also like to believe that my decisions are based on what the patient really needs or doesn't need. This situation is not unique to Walla Walla and has obviously been reported upon in the Seattle Times regarding Swedish and other places. It is my understanding that many of these pure RVU based contracts are being rethought at the system level. The RVU productivity model

000123

EXHIBIT 5 PG 009

Exhibit A Page 123                                        DREYER, OST

can, of course, benefit the surgeon financially, but also the facility, and the vendors among others, but often leaves the patient unaware that such an incentive even exists. I have heard various people in the Providence organization boasting that Dr. Yam and Dr. Dreyer were two of the highest producing neurosurgeons in the Providence system. I am confident that a review of the finances and case volume at St. Mary's will indicate a very large increase in the number of spine cases (especially high RVU producing fusions) being done there over the past 5+ years.

Another issue which is separate, but overall related to the RVU production problem in Walla Walla, and one that we have faced repeatedly at Kadlec, is the unavailability of the neurosurgeons in Walla Walla to care for patients who present there with neurosurgical problems or emergencies. On several occasions, the ER physician at St. Mary's has requested transfer of a patient to Kadlec who had recently been operated on at St. Mary's by one of their neurosurgeons, but who was now not available. I know of several patients who were actually transferred to Kadlec because the operative neurosurgeon of record could not be located and several other patients who were not transferred when I noted to the ER physician there that it was an EMTALA violation not to have appropriate call coverage plans for neurosurgical post-op patients. Because we have full-time neurosurgical ER coverage at Kadlec, it is not uncommon to have patients transferred to Kadlec because there is no one "on call" for neurosurgery at St. Mary's even though when I inquire where they are I have been told repeatedly they are in elective spine cases. The transfer center at Kadlec is now the same for both Providence St. Mary's and Kadlec since Providence acquired Kadlec Regional Medical Center and I have had repeated discussions with them about this issue.

My other hesitation in coming forward is the possibility of retribution which is a legitimate concern in smaller communities. I suspect this will be less likely now that it seems Dr. Dreyer is not coming back to St. Mary's. I have been a witness to what I would call the "dueling neurosurgeon" battles in Yakima that have resulted in the departure of multiple neurosurgeons there and various complaints to MQAC, etc. I was honestly hoping that this neurosurgeon would just implode through the medicolegal system and go away. Much of what I see in these cases is not so much malpractice or poor technique, however, as it is exaggerated surgical indications, outright fraud, and the consequences of an RVU production incentive system run amok.

Sincerely,

25 Whistleblower

000124

EXHIBIT 5 PG 010
Exhibit A  Page 124                    DREYER, OST
                                        Inv 00146