**Tornabene, Tyler H.L. (USAWAE)**

| | |
|---|---|
| **From:** | Yakely, Heather C. <Heather.Yakely@KutakRock.com> |
| **Sent:** | Friday, February 21, 2020 3:22 PM |
| **To:** | Tornabene, Tyler H.L. (USAWAE) |
| **Cc:** | Fruchter, Daniel (USAWAE) |
| **Subject:** | RE: Patient Safety Concerns- Deaconess |

Good afternoon Tyler,

I hope you are about home! I did reach my client. It is being discussed with exec on Monday, apparently there were a couple people out of town and she assured me they are taking it very seriously.


**Heather C. Yakely** Partner | Kutak Rock LLP
510 West Riverside Avenue, Suite 800, Spokane, WA 99201-0506
**O** (509) 747-4040 **Direct Dial** (509)343-4474
Heather.Yakely@KutakRock.com | www.KutakRock.com

**From:** Tornabene, Tyler H.L. (USAWAE) <Tyler.H.L.Tornabene@usdoj.gov>
**Sent:** Friday, February 21, 2020 2:44 AM
**To:** Yakely, Heather C. <Heather.Yakely@KutakRock.com>
**Cc:** Fruchter, Daniel (USAWAE) <Daniel.Fruchter@usdoj.gov>
**Subject:** Re: Patient Safety Concerns- Deaconess

> Heather,

> Just wanted to touch base with you as we had not heard anything from you or Deaconess regarding Dr. Dreyer. While Deaconess is under no obligation whatsoever to discuss anything with us, we thought it would be best to reach out regarding the current status of Dr. Dreyer at Deaconess and his current ability through Deaconess to perform surgeries. Again, Deaconess is under no obligation to provide us any information at this time, however as we assess other/additional avenues to address any immediate patient safety concerns we thought it best to reach out.

> Dan and I are traveling today but are generally available via email.

> Thank you,
> Tyler

Sent from my iPhone

On Feb 17, 2020, at 8:09 AM, Yakely, Heather C. <Heather.Yakely@kutakrock.com> wrote:

**EXHIBIT 6 PG 001**

Response to 3rd RFP No. 148 000314

Tyler, just an update, I have not yet heard back from Dayle however she is the correct contact, so I will assume that I will hear from her today and will let you know as soon as I do.

**Heather C. Yakely** Partner | **Kutak Rock LLP**
510 West Riverside Avenue, Suite 800, Spokane, WA 99201-0506
**O** (509) 747-4040 **Direct Dial** (509)343-4474
Heather.Yakely@KutakRock.com | www.KutakRock.com

**From:** Tornabene, Tyler H.L. (USAWAE) <Tyler.H.L.Tornabene@usdoj.gov>
**Sent:** Saturday, February 15, 2020 1:09 PM
**To:** Yakely, Heather C. <Heather.Yakely@KutakRock.com>
**Cc:** Fruchter, Daniel (USAWAE) <Daniel.Fruchter@usdoj.gov>
**Subject:** Patient Safety Concerns- Deaconess
**Importance:** High

Heather,

Thank you for getting back to me so quickly this weekend on this urgent matter. I've CC'd AUSA Dan Fruchter on this so you have both of our emails going forward. As discussed, we have opened an investigation into Dr. Jason Dreyer, a neurosurgeon who appears to currently be employed by Deaconess here in Spokane. While our investigation is ongoing, and in fact is at a very early stage, we have uncovered evidence that gives us great concern for the safety of any current patients of Dr. Dreyer. Accordingly, we are providing this information to you to share with the appropriate persons at Deaconess so that Deaconess can have sufficient information to fully and immediately ensure the safety of its patients. By providing Deaconess this information we are not intending any waiver of any work product, attorney-client, deliberative process, or law enforcement/investigative privilege. Further, we request that Deaconess not distribute this information, in any manner whatsoever, beyond Deaconess and beyond those persons at Deaconess or within your firm who need to have some or all of this information in order to ensure patient safety. Any disclosure beyond those who need to know at Deaconess or within your firm could seriously prejudice our ongoing investigation. If at any time there is a need to provide this information outside of your firm or Deaconess please approach us before any such disclosure so that we can work with you to determine the appropriate parameters of any such disclosure and the timing of any such disclosures in order to eliminate or minimize the potential adverse impact on our ongoing investigation.

As stated on our call, Dr. Dreyer is a target of our ongoing investigation for actions he took during his previous employment with Providence Health in Walla Walla, which we understand ended in 2018. Currently, based solely on the evidence we have to date, Deaconess is not a target of our investigation and we currently have no direct evidence, one way or the other, of Dr. Dreyer's actions while working for Deaconess. However, as is summarized in some detail in the attached materials, we have very serious and specific concerns that for approximately five years prior to his employment or association with Deaconess Dr. Dreyer engaged in severe and ongoing medical misconduct that included, but was not limited to, dozens of unnecessary surgeries apparently resulting at times in severe injuries and potentially even patient deaths. It is the credible evidence of unnecessary surgeries, the resulting patient harm, and evidence of Dr. Dreyer creating false and fraudulent medical records (primarily his op notes apparently mischaracterizing what had occurred during his surgeries as well as false and fraudulent diagnosis supposedly justifying the unnecessary surgeries in the first place) which has caused us to provide Deaconess with this information. Please be advised that while we have grave concerns for the safety of Dr. Dreyer's current patients, our ongoing investigation EXHIBIT 6 PG 002

Response to 3rd RFP No. 148 000315

final conclusions. Further, the attached materials are not our conclusions, nor are they the sum total of all information we possess, but these materials are being provided to you as they do contain summaries of some of the most concerning evidence and allegations that appear credible and which we are vigorously investigating.

We are available to further discuss this matter with you, and any persons with Deaconess that may be appropriate, at your earliest convenience. While Monday is a federal holiday we can be reached throughout the weekend by email and, as you know, my cell is (509) 413-9213. Next week we are traveling out of the District on a separate matter but we will be available Tuesday morning and can make time to get on a call as needed during our travels.

Thank you for your prompt attention to this matter,

Tyler H.L. Tornabene
Asst. U.S. Attorney
EDWA

Notice: This e-mail is the property of sender and/or United States. You are not authorized to use, copy and/or disclose the existence or contents of this e-mail without the express permission of sender. If you are not the intended recipient, please immediately contact sender and destroy and delete the e-mail and any and all copies. Please contact sender should you have any further questions. Thank you.

This E-mail message is confidential, is intended only for the named recipients above and may contain information that is privileged, attorney work product or otherwise protected by applicable law. If you have received this message in error, please notify the sender at 402-346-6000 and delete this E-mail message. Thank you.

EXHIBIT 6 PG 003

Response to 3rd RFP No. 148 000316

# Medical Misconduct

EXHIBIT 6 PG 004

# Review of cases

- I conducted a review of Dr. Dreyer's consecutive cases from November 2017 to February 2018
- The review found numerous issues with billing that can be broken down into 3 main categories of misconduct:
    1. Surgeries/services billed but not performed
    2. Unnecessary surgery
    3. Surgeries billed more than once
- In many cases, there is a combination of many elements of misconduct for the same patient
- I provide two examples of patients I am currently caring for first

EXHIBIT 6 PG 005

Response to 3rd RFP No. 148 000318

Pt 1 - ▓▓▓▓▓▓

- 61 y/o with prior neck and back surgery by Dr. Dreyer that had progressive foot weakness after Dr. Dreyer's lumbar surgery in 2018.

- He had a prior history of cervical fusion by another surgeon.  In 2016, Dr. Dreyer diagnosed him with severe stenosis at C3-4 and spondylolisthesis at C3-4.  He also diagnosed him with severe C3-6 foraminal stenosis.

- This "justified" a C3-4 ACDF and C3-T2 posterior fusion with extensive laminectomies form C3-T2.

- Dr. Dreyer performed that operation on 6/13/2016

EXHIBIT 6 PG 006

Response to 3rd RFP No. 148 000319

# Pre-Operative Imaging

- Preoperative x-rays from 11/30/2015 showing a mild subluxation at C3-4



EXHIBIT 6 PG 007

Response to 3rd RFP No. 148 000320

# Pre-Operative Imaging

- His MRI report and MRI from before surgery show no severe canal or foraminal stenosis
- There is narrowing but it is not severe and the radiologist indicates it is all stable



EXHIBIT 6 PG 008

Response to 3rd RFP No. 148 000321

# Surgery

- Dr. Dreyer performs a massive operation rebuilding his spine anteriorly and posteriorly
- The surgery took > 5 hours and the patient lost a liter of blood
- Extensive and unnecessary laminectomies were done from C2-T2



EXHIBIT 6 PG 009

Response to 3rd RFP No. 148 000322

# After surgery

- After healing from that operation, Dr. Dreyer arranged in 4/2018 a massive lumbar operation for kyphoscoliosis.

- He does have mild kyphosis of about 4 degrees but not scoliosis.

- Dr. Dreyer performs a massive operation from L2-S1 using front, side, and back approaches.



EXHIBIT 6 PG 010

Response to 3rd RFP No. 148 000323

# Surgery

- He bills maximally and bills L2-S1 laminectomies
- He does improve his lordosis but the patient worsens after surgery and requires a surgery by me to try to decompress his nerves further due to severe weakness in the right foot after this operation



EXHIBIT 6 PG 011

Response to 3rd RFP No. 148 000324

# Aftermath

- The patient's foot has remained very weak and likely will remain that way
- CT imaging obtained shows slow fusion at L5-S1 meaning more surgery may be needed
- CT shows no laminectomy was performed at L2 despite being billed for



EXHIBIT 6 PG 012

Response to 3rd RFP No. 148 000325

# Pt 1 Summary

- Dr. Dreyer performed a massive over operation in 2016 for this patient's neck when a smaller operation would have been undertaken by almost any other surgeon.
- Dr. Dreyer maximized billing with unnecessary cervical laminectomies adding to blood loss and cost.
- Dr. Dreyer then performed a maximum operation of the patient's low back making up the diagnosis of scoliosis and not performing a laminectomy he billed for.
- The patient has permanent neck pain, back pain, and right foot weakness that occurred after his operations and may need more surgery if he fails to fuse at L5-S1.

EXHIBIT 6 PG 013

Response to 3rd RFP No. 148 000326

# Pt 1 Compensation

- A total of 302.61 WRVU was billed to this one patient by Dr. Dreyer and treatment of this one patient led Providence to compensate Dr. Dreyer over $26,000

- This patient is undergoing continued rehab and may never fully heal his weakness in his leg

| Code | WRVU | Code | WRVU |
|---|---|---|---|
| 22845 | 11.94 | 22845 | 11.94 |
| 22853 | 4.25 | 22845 | 11.94 |
| 22551 | 25 | 22558 | 23.53 |
| | | 22585 | 5.52 |
| 26000 | 17.4 | 22585 | 5.52 |
| 22614 | 6.43 | 22585 | 5.52 |
| 22614 | 6.43 | 22853 | 4.25 |
| 22614 | 6.43 | 22853 | 4.25 |
| 22614 | 6.43 | 22853 | 4.25 |
| 22614 | 6.43 | 22853 | 4.25 |
| 61783 | 3.75 | 22842 | 12.56 |
| 63045 | 17.95 | 22612 | 23.53 |
| 63048 | 3.47 | 22614 | 6.43 |
| 63048 | 3.47 | 22614 | 6.43 |
| 63048 | 3.47 | 22614 | 6.43 |
| 63048 | 3.47 | 63047 | 15.37 |
| 63048 | 3.47 | 63048 | 3.47 |
| 63048 | 3.47 | 63048 | 3.47 |
| | 133.26 | 63048 | 3.47 |
| | | 63048 | 3.47 |
| | | 61783 | 3.75 |
| | | | 169.35 |

EXHIBIT 6 PG 014

Response to 3rd RFP No. 148 000327

Pt 2 - ▮▮▮▮▮

- 56 y/o male that had prior neck and back surgery by Dr. Dreyer.
- Dr. Dreyer performed a multilevel cervical fusion on this patient in 12/2016.  He was smoking at the time and a poor candidate for this operation.  Dr. Dreyer justified the operation by indicating primarily kyphosis which led to a bigger payout to Providence.
- His cervical x-rays showed no kyphosis but actually just flattening. The primary diagnosis was fabricated.
- His surgery in his neck was from C3-7 which in a smoker has a poor healing rate.

EXHIBIT 6 PG 015

Response to 3rd RFP No. 148 000328

# Pt 2

- After the cervical operation, Dr. Dreyer recommended a lumbar spinal fusion from L2-L5 for kyphosis and scoliosis again maximizing payment to himself and Providence.

- Preoperative imaging shows no kyphosis preoperatively. He has pre-op spinal measurements that are completely normal.



EXHIBIT 6 PG 016

Response to 3rd RFP No. 148 000329

# Surgery

- Dr. Dreyer maximum bills a L2-L5 fusion with L2-L5 laminectomies for severe stenosis.
- The patient's preoperative MRI shows no severe stenosis meaning multiple laminectomies were not indicated.
- The unnecessary laminectomies resulted in damage to the dura and nerves on the left



EXHIBIT 6 PG 017

# After Surgery

- The patient has kyphosis now as a result of his deformity operation by Dr. Dreyer
- He has persistent leg pain that has not resolved
- CT imaging shows no laminectomy was performed at L2 but had been billed



EXHIBIT 6 PG 018

Response to 3rd RFP No. 148 000331

## After surgery

- His neck fusion from Dr. Dreyer failed to heal leading to a cervical revision operation to fix his failed fusion adding additional cost and risk.

- His lumbar fusion has questionable healing and he has persistent pain due to the dural tears and nerve injury with weakness of his leg and foot.



EXHIBIT 6 PG 019

Response to 3rd RFP No. 148 000332

# Pt 2 Compensation

- In all, Providence billed two very high billing hospital stays and Dr. Dreyer billed a total of 208.66 WRVU's resulting in compensation in excess of $18,000 for a patient with permanent weakness and failed fusions all justified by fabricated diagnoses
- The patient has had additional surgery and may have many more as a result of Dr. Dreyer's actions

| Code | WRVU | Code | WRVU |
|------|------|------|------|
| 22551 | 25 | 22633 | 27.75 |
| 22552 | 6.5 | 22558 | 23.53 |
| 22552 | 6.5 | 22585 | 5.52 |
| 22552 | 6.5 | 22612 | 23.53 |
| 22853 | 4.25 | 22614 | 6.43 |
| 22853 | 4.25 | 22853 | 4.25 |
| 22853 | 4.25 | 22853 | 4.25 |
| 22853 | 4.25 | 22853 | 4.25 |
| 22846 | 12.4 | 61783 | 3.85 |
|  | 73.9 | 63047 | 15.37 |
|  |  | 63048 | 3.47 |
|  |  | 22842 | 12.56 |
|  |  |  | 134.76 |

EXHIBIT 6 PG 020

Response to 3rd RFP No. 148 000333

Pt 3 - ▇▇▇▇▇

- 79 y/o female operated on by Dr. Dreyer in 2016 and 2017.
- Her pre-operative MRI from 3/8/2016 showed L4-5 stenosis and mild disease at L3-4.
- Dr. Dreyer created the diagnosis of spondylolisthesis at L3-4 to justify surgery at that level.
- Dr. Dreyer performed a massive L3-5 fusion and "performed" decompressions at those levels.

EXHIBIT 6 PG 021

Response to 3rd RFP No. 148 000334

# Pt 3 ▓▓▓▓▓▓

- After the 2016 surgery, she continued to have back pain and leg symptoms.  In 2017, Dr. Dreyer recommended "re-performing" laminectomies at L3-L5 and fusion at L5-S1.

- The pre-operative imaging showed no stenosis or instability at L5-S1.

- He performed that operation on 12/5/2017 "re-performing" laminectomies that had previously been done, re-fusing her L3-5 already fused segments, and then fusion L5-S1.

- During this operation, he caused her to have a severe dural tear and nerve injury directly attributable to unnecessary surgery.

EXHIBIT 6 PG 022

Response to 3rd RFP No. 148 000335

Pt 3 ▮▮▮▮▮▮

- After her operation, she has had follow-up imaging.  The imaging shows a massive tear to the dura, nerves spilling out of the nerve space and no laminectomy at L3 has ever been performed despite billing it twice.

- She had to have a spinal cord stimulator placed to help with pain management and has permanent weakness and impairment of her left leg.

- She also has a hernia due to her 2016 operation that may eventually need repair.

- She may require additional surgery because she has not healed her unnecessary L5-S1 fusion and it will likely fail in the coming years.

EXHIBIT 6 PG 023

Response to 3rd RFP No. 148 000336

# Pt 3 Summary

1. L3-4 should not have been fused in 2016.  This was **fraudulently justified** and wrongly called unstable prior to her first operation in 2016.  This a form of **patient abuse and waste.**

2. L3-4 was not decompressed during her first operation.  This was **fraudulently billed.**

3. She **developed a lateral hernia from her L3-4 lateral approach** that has not been disclosed in documentation and is another complication undocumented.

4. L3-5 was fused solidly posterolaterally after her 2016 operation and noted as such by Dr. Dreyer but fusion was reperformed in her 2017 operation and then **rebilled at L3-L5 levels fraudulently.**

5. L5-S1 did not need extension of fusion but this was performed by Dr. Dreyer anyway which is **malpractice and unnecessary surgery.**

6. The L3-4 decompression that was not performed but billed in 2016 was again not indicated and again not performed in 2017 but was once again re-billed.  This is **fraud.**

7. The L4-5 segment had been decompressed fully in 2016 but this was reperformed.  As there was no bone more to remove, it is unclear what was drilled.  The dura was likely drilled causing damage to the thecal sac and **resulting in damage to the dura and a large pseudomeningocele. This is malpractice and was unnecessary.**

8. The L5-S1 fusion that should not have been performed as it wasn't medically indicated was performed and **now has a pseudoarthrosis.  This is malpractice, unnecessary surgery, and patient abuse.**

EXHIBIT 6 PG 024

Response to 3rd RFP No. 148 000337

# Pt 3 Compensation

- Dr. Dreyer billed this patient for 194.03 WRVU over her two operations both of which led to compensation exceeding $17,000.

- Providence benefited from his complications, adding more billing to her hospital stays and increasing their DRG justification.

| Code | WRVU | Code | WRVU |
|------|------|------|------|
| 22558 | 27.75 | 22633 | 27.75 |
| 22585 | 5.52 | 22614 | 6.43 |
| 22612 | 23.53 | 22614 | 6.43 |
| 22614 | 6.43 | 63047 | 15.37 |
| 63047 | 15.37 | 63048 | 3.47 |
| 63048 | 3.47 | 63048 | 3.47 |
| 63048 | 3.47 | 22853 | 4.25 |
| 22853 | 4.25 | 22842 | 12.56 |
| 22853 | 4.25 | 61793 | 3.85 |
| 22842 | 12.56 | | 83.58 |
| 61793 | 3.85 | | |
| | 110.45 | | |

EXHIBIT 6 PG 025

Response to 3rd RFP No. 148 000338

# Billed not performed

- ████ — Deformity surgery billed by Dr. Dreyer and Providence but no effort was made to perform any deformity correction in this patient.  The surgery will most definitely fail in the future and need another massive billing operation to correct.

- ████████ - L2-S1 degenerative disease with minimal loss of lordosis documented as scoliosis and kyphosis.  Has a extensive fusion performed L2-L5 that worsens her kyphosis billed by Dr. Dreyer and Providence billed at the highest level possible.

- ████████ — Documents deformity not present.  Performs an extensive "deformity" operation but worsens the deformity.  Providence billed the highest DRG for this operation as a result of the coding.

- ████ — Documents kyphosis that was not present and performs a maximum anterior posterior fusion again benefitting Dr. Dreyer and Providence with the highest possible billing.

- ████ — Terrible prior construct of Dr. Dreyer.  Reoperated.  Rebilled fusion at already fused levels and re-billed laminectomies that were not performed at L4-5 in 2014 or 2018.

- ████ — Has surgery for "deformity" but deformity worsens due to the operation.  Postop images show no decompression at L2 but this was billed.

EXHIBIT 6 PG 026

Response to 3rd RFP No. 148 000339

# Billed not performed

- ██████ Documents severe stenosis at but none is present as prior laminectomies had already been performed. Performs a fusion for scoliosis that is not present and "re-performs" laminectomies that had already been done by another surgeon.
- ██████ Performs a massive surgery for mild scoliosis. Bills but imaging does not show L2 or L3 laminectomies. Her deformity is worse after surgery and will require a much more aggressive surgical correction.
- ██████ Prior ACDF patient rebilled for levels C5-7 that had already fused solidly on imaging.
- ██████ Documents pre-operatively are copied all the way back from 2017 meaning multiple outpatient visits are fraudulently billed.
- ██████ Documentation copied from 1/13/1017 until 11/2017 letter per letter resulting in many high level billed outpatient visits.
- ██████ Amputation patient documented as having normal strength in her amputated leg indicating the use of templating to an extreme level. Billed a complex vertebrectomy/osteophytectomy when disease was mild.
- ██████ Copies notes back to 2016 pre-operatively multiple times and recommends emergent surgery for what is a chronic problem that is a poor candidate for surgery due to smoking. Documents severe stenosis at C6-7 but due to the surgery taking a long time, downgrades the stenosis to mild and does not perform the surgery.
- ██████ Has a decompression and fusion but no laminectomies are present on intraoperative imaging.

EXHIBIT 6 PG 027

Response to 3rd RFP No. 148 000340

# Examples of Misconduct – Unnecessary Surgeries

- ▉▉▉▉ – Had an L1-2 herniated disc.  No discectomy was performed which would be the standard of care and a much higher billing fusion was performed.
- ▉▉▉▉ – Had an L1-2 herniated disc.  No discectomy was performed which would be the standard of care and a much higher billing fusion was performed.
- ▉▉▉▉ – Unnecessary cervical corpectomy for maximum billing.  Fusion appears to be failing in follow-up meaning more surgery will be needed.
- ▉▉▉▉ – L5-S1 disc herniation treated with a maximum billing L5-S1 anterior and posterior fusion and decompression.
- ▉▉▉▉ – Had no nerve compression or indication for surgery and had a major fusion performed for normal anatomy.
- ▉▉▉▉ – Major high risk operation for minimal disease that no surgeon would offer this patient.
- ▉▉▉▉ – C3-7 ACDF for "kyphosis" but the patient has no deformity.  This maximized Providence's DRG payment.
- ▉▉▉▉ – Prior fusion with diagnoses that were fabricated to justify surgery in 2016.  He reformed fusion from the anterior and posterior spine and performed extensive unnecessary laminectomies.

EXHIBIT 6 PG 028

Response to 3rd RFP No. 148 000341

# Examples of Misconduct – Unnecessary Surgeries

- ████████ – Major operation with multilevel fusion for essentially close to or normal anatomy.
- ████████ – Documents severe stenosis and authorized an urgent ACDF for kyphosis and severe stenosis none of which are present.
- ████████ – Lumbar laminectomy performed for no indication.
- ████████ – Prior C4-5 fusion patient. Had a highly unusual and unindicated C4 corpectomy to maximize billing when lesser surgery was indicated.
- ████████ – Unnecessary four level cervical fusion when only two levels had pathology.
- ████████ – Three level cervical fusion when only two levels were indicated.
- ████████ Maximum anterior and posterior cervical operations with laminectomies where no stenosis was even present. Corpectomy performed for unknown reasons to maximize billing.
- ████████ L3-S1 foraminal narrowing treated with an extensive fusion L3-L5 with unnecessary midline laminectomy.
- ████████ Had a L3-5 fusion performed for L4-5 stenosis. Had planned an even larger operation but only L3-5 was fused and decompressed.

EXHIBIT 6 PG 029

Response to 3rd RFP No. 148 000342

# Examples of Misconduct — Unnecessary Surgeries

██████ – Major fusion performed for one sided foraminal narrowing on the right only.  Had an unnecessary left laminectomy.

██████ – C3-5 prior fusion patient that was well healed.  Performed an unnecessary corpectomy of two fused levels and extend the fusion to a essentially normal level at C6-7.

██████ – Documents diffuse scoliosis in a patient with mild scoliosis that would not be considered operative.  Falsely documents L4-5 instability.  Fuses multiple levels as a result.

██████ – Unnecessary corpectomy for maximum billing.  Fusion appears to be failing in follow-up meaning more surgery will be needed.

EXHIBIT 6 PG 030

Response to 3rd RFP No. 148 000343

# Examples of Misconduct – Unnecessary Surgeries

- ▓▓▓▓▓ – Unnecessary laminectomies added to the operation in a patient with no central stenosis.
- ▓▓▓▓ – Unnecessary laminectomies added to the operation in a patient with no stenosis.
- ▓▓▓ L2-3 stenosis offered only a fusion to maximize billing.
- ▓▓▓ Documents kyphosis and instability fraudulently justify a major fusion to maximize billing.
- ▓▓▓▓ Documents an additional stenosis not present at C4-5 to extend surgery to that level.
- ▓▓▓ Copied documentation.  Falsely documents L4-5 instability to extend the fusion.
- ▓▓▓▓ C4-6 ACDF was performed with C4-5 fusion performed for fabricated instability when none was present on x-rays and on radiology interpretation.  C5-6 was appropriate.

EXHIBIT 6 PG 031

Response to 3rd RFP No. 148 000344

# Examples of Misconduct – Double Billed Surgeries

- ▪ ████████ Prior fusion patient L4-S1 billed as a deformity surgery. Reoperated on again extending unnecessarily to L2-3 and L3-4 again billed as a deformity operation and rebilled for fusion at L4-S1 evne though this was already complete. The patient's deformity persists and has already failed again likely requiring another major operation to correct.

- ▪ ████████ Prior Dreyer fusion patient that already had a complete laminectomy on the left billed with his prior operation. Dr. Dreyer "performed" another laminectomy even though no lamina remained on imaging preoperatively.

- ▪ ████████ Prior unnecessary extensive L4-S1 fusion in 2015. Dr. Dreyer "re-performed" L4-S1 fusion and repeated laminectomies at the same exact levels that he had previously already billed that had already healed and had already been decompressed on imaging.

- ▪ ████████ Self admitted unnecessary surgery to go back and decompress a non-compressed nerve from a prior operation.

- ▪ ████████ – C5-7 ACDF prior just 8 months before. Had a C3-5 ACDF for no stenosis and re-fusion billed from C5-7.

- ▪ ████████ My prior patient. Has extension of his fusion but was re-billed from L3-4, L4-5, and L5-S1 fusions that had already been completely healed on pre-operative imaging.

- ▪ ████████ – Copied notes 100%. Performed an unnecessary fusion 1/2018 when a laminectomy was indicated. She developed an infection was doing poorly at last follow-up. Re-performs operation in 2/2018 with again copied notes repeating his laminectomies that he had already billed again. Follow-up images show not one difference in laminectomies from 1/2018 to 2/2018 indicating this work was not performed.

EXHIBIT 6 PG 032

Response to 3rd RFP No. 148 000345

# Examples of Misconduct – Double Billed Surgeries

- ████████ – Prior healed C4-5 fusion falsely diagnosed as non-healed and the re-fused again by Dr. Dreyer.

- ████████ Prior C3-4 solid fusion extended to C7.  C3-4 was unfused, re-fused and re-billed which was unnecessary but maximized billing.

- ████████ – Fraudulent justification of surgery at L3-4 but also rebilled a prior decompressed level when her pre-operative images showed no lamina left to drill.

- ████████ Prior Dreyer fusion from 2015 with prior laminectomies.  Dr. Dreyer "re-performs" L4 and L5 laminectomies that had been billed previously in 2015.

EXHIBIT 6 PG 033

Response to 3rd RFP No. 148 000346

# Misconduct Summary

- This list of names and operations performed is encompasses only patients operated from November 6, 2017 to February 6, 2018
- In all, greater than 80% of his operations over that time contain major issues.

EXHIBIT 6 PG 034

Response to 3rd RFP No. 148 000347

# Misconduct Discovery

- As the former neuroscience medical director, I have knowledge of exactly where to get the files and information necessary to prove this misconduct.
  - Requesting Dr. Dreyer's fee sheets from the "G Drive"
    - These files show deliberate billing and when it was performed.  These documents will show Dr. Dreyer completed these forms in close proximity to the operation he just performed and willfully marked for billing that he did not perform.
  - Acquiring H&P, clinic notes, operative notes from EPIC
    - These documents will show the exact false documentation and repeated documentation of issues.
    - These documents will show the degree of harm caused to these patients.
  - Pre-operative, intraoperative, and postoperative imaging and reports from PACS
    - Pre-operative imaging will show different pathology than what Dr. Dreyer identifies and will contradicts radiology impressions and third party interpretation
    - Intraoperative imaging is obtained in many cases.  With 3D reconstruction of these, even more unperformed operations would come to light.
    - Post-operative imaging will show no correction of deformity in many cases, missing laminectomies, and misadventures leading to patient harm.

EXHIBIT 6 PG 035

Response to 3rd RFP No. 148 000348

# Harm

EXHIBIT 6 PG 036

Response to 3rd RFP No. 148 000349

# Harm

- ███████ – C3-7 cervical fusion performed for one level disease mentioned previously.  This patient's course was complicated by a near fatal aspiration/death and required an emergent take back to surgery for hematoma evaluation.

- ██████ – Failed fusion due to overbilling and complication by Dr. Dreyer that resulted in a spinal cord injury.  Reoperation turned into a massive anterior and posterior cervical operation with multiple unnecessary laminectomies.  This patient has permanent, irreversible deficits related to over-operation.

- ███████ – 2014 unnecessary fusion for a L4-5 disc herniation complicated by a massive hematoma and additional surgery.  In 2018, Dr. Dreyer advised additional fusion for deformity not present.  He fraudulently performed this operation and now the patient has multiple broken screws and fraudulently billed laminectomies that he didn't perform.

- ██████r – Flat back syndrome is used to authorize surgery when alignment is within normal limits.  Performs a maximum surgery and unnecessary laminectomy leading to severe and likely permanent nerve pain.

- ████ – Billed a maximum fusion L4-S1 for "severe stenosis" when no stenosis was present whatsoever in a high risk, poor surgical candidate.  This patient nearly committed suicide multiple times after this operation.

- ████████ – Massive surgery planned but multiple components aborted with out explanation.  Laminectomies performed led to a massive epidural hematoma leading to emergent re-operation.

- ███████ – Pt had just about the largest operation possible on a person's neck from C3-7 anteriorly with unnecessary corpectomies and C3-T2 posteriorly with extensive unnecessary laminectomies.  The patient died shortly after the operation while in the hospital.

EXHIBIT 6 PG 037

Response to 3rd RFP No. 148 000350

# Harm

- ⬛⬛⬛ – Surgery was indicated but Dr. Dreyer performed 6 high dose radiation scans on this patient in surgery to justify higher billing but exposing this patient to radiation at that dose will increase his risk on cancer.

- ⬛⬛ – Failed fusion from 2014 with a massive and large pseudomeningocele due to prior surgery. Had her fusion extended and continues to suffer permanent severe pain.

- ⬛⬛ – 24 y/o female with C/T/L fusion are all unnecessary, and the patient has done very poorly with each operation with likely life long irreversible severe pain.

- ⬛⬛ – Patient with multiple "re-performed" laminectomies resulting a a dural tear. This lead to multiple subsequent revisions and even a VP shunt to heal the issue. He has permanent pain and nerve injury.

- ⬛⬛ – Documents kyphosis not present and myelopathy not present to justify surgery. The patient's kyphosis is made worse by the operation and he suffers from permanent swallowing difficulty. No stenosis to justify surgery was even present.

- ⬛⬛ – Scoliosis operation with 3 unnecessary laminectomies for "stenosis" that was not present. She suffered a CSF leak due to injuring the dura from these unnecessary decompressions.

EXHIBIT 6 PG 038

Response to 3rd RFP No. 148 000351

# Harm

- ████ — Prior patient with unnecessary fusion in 2016 that consisted of fusion the spine and re-performing an already performed L4-5 laminectomy resulting in a nerve injury and dura tear. He required later an spinal cord stimulator and has permanent severe pain.

- ████ — Authorized an extensive urgent fusion on this high risk surgical patient resulting in significant hypotension, worsening diabetes, and bowel issues that required an extensive hospitalization based on the false diagnoses of spondylolisthesis that was not present.

- ████ — Unnecessary fusion that led to her developing a hernia complication.

- ████ — Prior failed fusion, re-performed laminectomies that were already performed causing permanent nerve and permanent severe pain and weakness (Pt 3 Above).

- ████ — Exposed this patient to high dose radiation unnecessarily to perform a navigated decompression to maximize billing. This could cause the patient to have cancer at a later time in life.

- ████ — Multiple unnecessary laminectomies performed that to tears in the dura. Her notes are also copied and pasted nearly 100% over many times indicating likely fraudulent billing.

EXHIBIT 6 PG 039

Response to 3rd RFP No. 148 000352

# Harm Summary

- This same list of harm does not include all of the re-operations that will likely occur in the same group of patients from November 6, 2017 to February 6, 2018

- The list includes suicide attempts, death, permanent nerve injury, increased cancer risk, and severe chronic irreversible pain for a large number of Dr. Dreyer's patients.

- Providence did not conduct any reviews of most of these cases and even the death result that I told Providence about was attributed falsely to an "enlarged heart" not to the massive operation performed on him unnecessarily.

EXHIBIT 6 PG 040

Response to 3rd RFP No. 148 000353