**STATE OF WASHINGTON
DEPARTMENT OF HEALTH
BOARD OF OSTEOPATHIC MEDICINE AND SURGERY**

| | |
|---|---|
| In the Matter of<br><br>**JASON ADAM DREYER**<br>Credential No. DO.OP.60323732<br><br>Respondent | **No. M2020-990**<br><br>**NOTICE AND ORDER FOR WITHDRAWAL OF STATEMENT OF CHARGES** |

### 1. FACTS and NOTICE

1.1   On March 15, 2021, the Board Of Osteopathic Medicine And Surgery (Board) issued a Statement of Charges against Respondent.

1.2   Based on further review of the matter, on November 16, 2023, the Board determined that the Statement of Charges should be withdrawn.

Dated November 17, 2023

STATE OF WASHINGTON
DEPARTMENT OF HEALTH
BOARD OF OSTEOPATHIC MEDICINE AND
SURGERY

*[signature]*

KRISTIN G. BREWER, WSBA #38494
ASSISTANT ATTORNEY GENERAL

NOTICE OF WITHDRAWAL
OF STATEMENT OF CHARGES
NO. M2020-990

PAGE 1 OF 2

Dr. Dreyer's SUPPLEMENTAL Response to RFP No. 51
Page 260

EXHIBIT 8 PG 001

## 2. ORDER

Based on this Notice, the Board hereby ORDERS that the Statement of Charges is WITHDRAWN without prejudice.

DATED: __11/17_____, 2023

STATE OF WASHINGTON
DEPARTMENT OF HEALTH
BOARD OF OSTEOPATHIC MEDICINE
AND SURGERY

*Yuri Tsirulnikov, DO, MHA*
Yuri Tsirulnikov, DO, MHA (Nov 17, 2023 08:55 PST)
**PANEL CHAIR**

NOTICE OF WITHDRAWAL
OF STATEMENT OF CHARGES
NO. M2020-990

PAGE 2 OF 2

Dr. Dreyer's SUPPLEMENTAL Response to RFP No. 51
Page 261

EXHIBIT 8 PG 002

**STATE OF WASHINGTON
DEPARTMENT OF HEALTH
BOARD OF OSTEOPATHIC MEDICINE AND SURGERY**

| | |
|---|---|
| In the Matter of<br><br>**JASON ADAM DREYER**<br>Credential No. DO.OP.60323732<br><br>Respondent | **No. M2020-990**<br><br>**STIPULATION TO INFORMAL DISPOSITION** |

## 1. STIPULATION

1.1 The executive director of the Board of Osteopathic Medicine and Surgery (Board), on designation by the Board, has made the following allegations:

    A. On February 12, 2013, the State of Washington issued Respondent a credential to practice as an osteopathic physician and surgeon. Respondent's credential is currently active.

    B. On or about August 2014 through January 2017, while performing spine surgeries on Patients A through G at Providence St. Mary's in Walla Walla, Washington, Respondent practiced below medical standards of care by performing extensive spine surgeries without clear medical indications. Specifically, Respondent overstated the Patients' diagnosis of "dynamic instability" to justify spinal fusion surgeries, overstated treatments performed during spine surgeries, and inadequately charted in Patients' records, as evidenced by the following allegations.

    C. On or about September 15, 2016, Respondent performed spinal fusion surgery on Patient A. Patient A was a sixty-six (66) year old male with complaints of low back pain for approximately six (6) years and reports of rapidly worsening symptoms. After examining the patient and reviewing patient radiographic reports preoperatively, Respondent diagnosed Patient A with lumbar spondylolisthesis, spondylosis of L (Lumbar) 3 through S (Sacral)1 and spinal stenosis of L3-S1. Respondent recommended and performed spinal fusion surgery, specifically Extreme Lateral

STIPULATION TO INFORMAL DISPOSITION
NO. M2020-990

PAGE 1 OF 8
STID – REV. 10/20

Dr. Dreyer's SUPPLEMENTAL Response to RFP No. 51
Page 262

EXHIBIT 8 PG 003

Interbody Fusion (XLIF) of L 3-5 and Transforaminal Lumbar Interbody Fusion (TLIF) of L5 through S1. However, radiographic imagery only indicated lumbar spondylosis without conclusive spondylolisthesis. The accepted surgical medical standard of care for a diagnosis of lumbar spondylosis would be to perform a less invasive decompression surgery, not the more invasive spinal fusion surgery.

D. On or about July 29, 2015, Respondent performed spine fusion (TLIF L4-S1) surgery on Patient B. Patient B was a forty-seven (47) year old female with complaints of back and leg pain that began in 2014 after Patient B fell down approximately seven (7) steps of stairs. Respondent's preoperative notes state that symptoms worsened from onset and rated as severe and continuous. Respondent diagnosed Patient B with spondylosis and stenosis L4-S1 and recommended spine fusion surgery (TLIF L4-S1). However, Patient B's radiographic imagery showed only very minor disc abnormalities with minimal to no spinal stenosis. Further, Respondent's surgical notes state that a laminectomy was performed for the purpose of decompression, but post-operative radiographic imagery indicated that the laminectomy was only performed at the fusion surgical site, indicating that procedure was not performed for the purpose of decompression. Performing spine surgery on a patient with minor disc abnormalities minimal spinal stenosis is not within the medical standard of care.

E. On or about August 11, 2014, Respondent performed spine surgery (TLIF L3-S1) on Patient C. Patient C was a thirty-four (34) year old male with back and leg pain for approximately six (6) years. Patient C described back and leg pain as an "aching sensation." Respondent's preoperative notes diagnoses included spondylolisthesis, spondylosis, and stenosis with recommended multi-level surgery. However, the preoperative radiographic imaging only indicated a very mild disease, indicating a disc bulge

STIPULATION TO INFORMAL DISPOSITION  
NO. M2020-990  
PAGE 2 OF 8  
STID – REV. 10/20

Dr. Dreyer's SUPPLEMENTAL Response to RFP No. 51  
Page 263

EXHIBIT 8 PG 004

with possible impingement of S1 nerve and mild degenerative disc and facet changes at L3-5. Performing invasive multi-level surgery on a patient with minor spine abnormalities and is not within the medical standard of care.

F.  On or about August 25, 2016, Respondent performed spinal fusion surgery (L2-3) on Patient D. Patient D was a fifty-five (55) year old male with complaints of lower back pain and right leg numbness from a work-related lifting injury sustained in December 2015. Respondent's preoperative diagnoses included spondylolisthesis at L2-3 and spinal stenosis at L2-3 with recommendation for a L2-3 spinal fusion. However, a preoperative MRI completed on or about April 20, 2016, did not support a diagnosis of either spondylolisthesis or stenosis, noting only multilevel degenerative changes with no instability. During a postoperative visit, Respondent charted that the patient continued to have pain on both sides of his legs. On or about January 3, 2017, Respondent performed a decompression laminectomy at L3-S2. Operative notes for this procedure state that Patient D did not have instability at L5-S1 during intraoperative testing. Performing spinal fusion surgery without evidence of instability is not within the medical standard of care.

G.  On or about February 25th and July 30th, 2015, Respondent performed spinal fusion surgeries on Patient E. Patient E was a forty-eight (48) year old male with complaints of back and leg pain for approximately seven (7) months prior to his initial presentation.

   i.  Respondent's preoperative diagnoses for the first surgery on 1/25/2015 included spondylosis L4-5, L5-S1 and stenosis L4-5, L5-S1, noting "dynamic instability" of the spine. The first surgery performed was a Level 3 Anterior Cervical Discectomy and Fusion (ACDF), laminectomies at L5-S1 and a facetectomy at the L4-5 level on the right side. However, preoperative radiographic imagery indicated only disc

        degeneration and narrowing at L5-S1 with no spinal stenosis noted. Further, postoperative imaging dated February 25, 2015 shows no evidence of a facetectomy procedure.

    ii.  On or about July 30, 2015, Respondent performed an C4-7 ACDF (Anterior Cervical Discectomy and Fusion) surgery on Patient E. Respondent's preoperative diagnoses included cervical kyphosis, spondylosis and stenosis. However, preoperative radiographic imaging did not support this diagnosis.

    iii.  Performing multiple cervical spine surgeries on a patient without clear indication of instability is not within the medical standard of care.

H.  On or about November 6, 2014, Respondent performed cervical spine surgery (2 Level ACDF) on Patient F. Patient F was a forty-one (41) year old female with complaints of neck and arm pain and weakness that started after a slip and fall accident in December 2013. Preoperatively, the patient was diagnosed with a disc bulge at C6-7 and with a C6 and C7 radiculopathy. However, preoperative radiographic imaging indicated only a small central disc bulge at C6-7 with no stenosis or instability. Performing cervical spine surgery on a patient without a clear indication of instability is not within the standard of care.

I.  On or about September 24, 2015, Respondent performed spinal surgery on Patient G. Patient G was a forty-three (43) year old female, morbidly obese, with complaints of low back pain and left thigh numbness for approximately five (5) years, and with symptoms worsening over the past three (3) months. Respondent diagnoses included spondylolisthesis at L4-5 and spondylosis at L5-S1 with recommended lumbar surgery (Level 2 ACDF). However, preoperative radiographic imaging did not indicate any instability or any significant pathology. Performing lumbar surgery

EXHIBIT 8 PG 006

Dr. Dreyer's SUPPLEMENTAL Response to RFP No. 51
Page 265

on a morbidly obese patient without clear indications of instability or pathology is not within the medical standard of care.

J.  Respondent's charting for Patient A-G was inadequate, with a demonstrated pattern of "cut and paste" template language in patients' charts.

1.2  Respondent does not admit any of the allegations in the Statement of Allegations and Summary of Evidence or in Paragraph 1.1 above. This Stipulation to Informal Disposition (Stipulation) shall not be construed as a finding of unprofessional conduct or inability to practice.

1.3  Respondent acknowledges that a finding of unprofessional conduct or inability to practice based on the above allegations, if proven, would constitute grounds for discipline under RCW 18.130.180(1), (4), and (13).

1.4  Respondent agrees that under RCW 18.130.172, any sanction as set forth in RCW 18.130.160, except subsections (1), (2), (6), and (8), may be imposed as part of this Stipulation, but the Respondent may agree to reimburse the disciplining authority the costs of investigation and processing the complaint up to an amount not exceeding one thousand dollars ($1,000.00) per allegation.

1.5  The parties wish to resolve this matter by means of this Stipulation pursuant to RCW 18.130.172(1).

1.6  This Stipulation has no force or effect and does not bind the parties unless it is accepted by the Board.

1.7  This Stipulation is not formal disciplinary action. However, if the Board accepts this Stipulation, it will be reported to the National Practitioner Databank (45 CFR Part 60) and elsewhere as required by law. It is a public document and will be placed on the Department of Health's website and otherwise disseminated as required by the Public Records Act (Chap. 42.56 RCW).

1.8  The Board agrees to forgo further disciplinary proceedings concerning the allegations.

A.  This Stipulation resolves all cases specifically alleged in the Statement of Allegations (Case No. 2019-3611), all complaints, received by the Board before the entry date (the day of Board acceptance) of this Stipulation (Case Nos. 2021-3654, 2021-3748,

2021-3805, 2021-3847, 2021-3898, 2021-4056, 2021-4918, 2021-5045, 2021-6299, 2021-9156, and 2022-8854), and any complaints received by the Board after the entry date which are determined to be of the same conduct within the same time period set forth in the Allegations Violations.

1.9 Respondent agrees to successfully complete the terms and conditions of this informal disposition.

1.10 Respondent understands that a violation of this Stipulation, if proven, would constitute grounds for discipline under RCW 18.130.180 and the imposition of sanctions under RCW 18.130.160.

## 2. COMPLIANCE WITH SANCTION RULES

2.1 The disciplining authority applies WAC 246-16-800, *et seq.*, to determine appropriate sanctions. WAC 246-16-800(2)(c) requires the disciplining authority to impose terms based on a specific sanction schedule unless "the schedule does not adequately address the facts in a case." Respondent is at the end of his effective practice and surrender alone is enough to protect the public.

## 3. INFORMAL DISPOSITION

The parties agree to the following:

3.1 Respondent **SURRENDERS** his credential to practice as an osteopathic physician and surgeon and agrees to never resume the practice of osteopathic physician and surgeon in the State of Washington, including any temporary, emergency, or volunteer practice. Respondent understands that he has no right to reapply for licensure or to apply for license renewal, reinstatement, or reactivation of his osteopathic physician and surgeon credential.

3.2 Respondent shall obey all federal, state, and local laws and all administrative rules governing the practice of the profession in the State of Washington.

3.3 The Board or its designee may verify Respondent's compliance with the terms and conditions of this Stipulation, if applicable.

3.4 Any documents required by this Stipulation shall be sent to Department of Health Compliance at PO Box 47873, Olympia, WA 98504-7873.

3.5 Respondent is responsible for all costs of complying with this Stipulation.

STIPULATION TO INFORMAL DISPOSITION
NO. M2020-990

PAGE 6 OF 8
STID – REV. 10/20

Dr. Dreyer's SUPPLEMENTAL Response to RFP No. 51
Page 267

EXHIBIT 8 PG 008

3.6   Until the surrender of Respondent's credential has been completed, Respondent shall inform the Department of Health Office of Customer Service, in writing, of changes in Respondent's residential and/or business address within thirty (30) days of the change. The mailing address for the Office of Customer Service is PO Box 47865, Olympia, WA 98504-7865.

3.7   The effective date of this Stipulation is the date the Adjudicative Clerk's Office places the signed Stipulation into the U.S. mail. If required, Respondent shall not submit any fees or compliance documents until after the effective date of this Stipulation.

## 4. RESPONDENT'S ACCEPTANCE

I, JASON ADAM DREYER, have read, understand, and agree to this Stipulation. This Stipulation may be presented to the Board without my appearance. I understand that I will receive a signed copy if the Board accepts this Stipulation.

JASON ADAM DREYER
RESPONDENT

11/15/23
DATE

RYAN M. BEAUDOIN, WSBA #30598
ATTORNEY FOR RESPONDENT

11/15/2023
DATE

JEFFERY R. GALLOWAY, WSBA #44059
ATTORNEY FOR RESPONDENT

11/15/2023
DATE

STIPULATION TO INFORMAL DISPOSITION
NO. M2020-990

PAGE 7 OF 8
STID – REV 10/20

## 5. BOARD ACCEPTANCE

The Board accepts this Stipulation to Informal Disposition. All parties shall be bound by its terms and conditions.

DATED: 11/16 , 2023.

STATE OF WASHINGTON
DEPARTMENT OF HEALTH
BOARD OF OSTEOPATHIC MEDICINE
AND SURGERY

*Yuri Tsirulnikov, DO, MHA*
Yuri Tsirulnikov, DO, MHA (Nov 16, 2023 20:06 PST)

**PANEL CHAIR**

PRESENTED BY:

*Catharine Roner-Reiter*

CATHARINE RONER-REITER, WSBA #56213
DEPARTMENT OF HEALTH STAFF ATTORNEY

11/17/23
DATE

STIPULATION TO INFORMAL DISPOSITION
NO. M2020-990

PAGE 8 OF 8
STID – REV. 10/20

Dr. Dreyer's SUPPLEMENTAL Response to RFP No. 51
Page 269

EXHIBIT 8 PG 010